IDEAL PLUMBING COMPANY, Plaintiff, *v.* SHEVLIN-MANNING, INC., *et al.*, Defendants.—(M & M ELECTRIC COMPANY, Counterplaintiff-Appellant, *v.* SHEVLIN-MANNING, INC., *et al.*, Counterdefendants-Appellees.)

Third District    No. 80-364

Opinion filed May 21, 1981.

Rolfe F. Ehrmann, of Dixon, Devine, Ray & Morin, of Dixon, for appellant.

Ole Bly Pace, III, of Ward, Ward, Murray, Pace & Johnson, of Sterling, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Whiteside County in favor of counterdefendants-appellees, Shevlin-Manning, Inc., Ellington Miller Company, and American National Bank and Trust Company (hereinafter collectively known as the Joint Venture) and against counterplaintiff-appellant M & M Electric Company (M & M). The instant cause originally involved multiple parties and claims. However, this appeal deals only with the bench trial had on M & M's counterclaim against the Joint Venture.

The testimony at the trial tended to show the following. Edward McGinn, president of M & M, testified that he met with Bernard Shevlin, of Shevlin-Manning, Inc., one of the prime contractors in the construction of the Northland Mall. McGinn told Shevlin that M & M was interested in doing the electrical construction at the Mall. He stated that M & M had just completed a job at the Belscot Shopping Center in Rock Falls, Illinois, and he described the lights and equipment used on that job. Shevlin gave McGinn a preliminary drawing of the Mall and other information so that McGinn could calculate a bid.

On August 5, 1971, McGinn went to Buffalo, New York, and met with William Manning and Joe Allen of Shevlin-Manning, Inc., to discuss McGinn's calculations for the proposed job. McGinn testified at trial that at that conference he went over the Belscot job file with Manning to explain how M & M arrived at its figures. McGinn received general specifications prepared by Allen, a first print of a J. C. Penney store at the Mall, and a copy of certain lease criteria containing general information concerning construction, but few details about the electrical work.

The specificity of the discussion regarding the Belscot job and its relation to the Mall is disputed by the parties. Appellant claims that McGinn explained to Manning in detail how he took the known Belscot costs and applied them to arrive at a projected cost per square foot for each of the stores, as well as for the Mall itself. However, appellee points out that on cross-examination McGinn admitted he had stated in a deposition that Manning had told him the Mall would be different from Belscot's. Exhibits 15 and 16, containing the figures used on the Belscot job and how they were to be applied to the Mall, were offered into evidence by the appellant. However, neither exhibit had been revealed in pretrial discovery, and appellees objected on this ground. Counsel for M & M disputed whether the evidence was encompassed by the discovery request but stated that, in any event, counsel was aware of, and M & M had forgotten about, the material at the time of discovery. The court sustained appellees' objections, finding that failure to disclose them constituted a violation of Supreme Court Rule 219 (Ill. Rev. Stat. 1979, ch.

110A, par. 219). Therefore the court, having previously admitted the documents subject to appellees' objections, struck the exhibits and any testimony referring to them.

As a result of the August 5 discussion, Manning asked McGinn to offer a firm price. McGinn replied that, due to lack of documentation and drawings of the job, he could not offer a firm price but would instead offer a "price not to exceed" $410,000. This was agreeable and on August 7, 1971, M & M submitted an offer, which was subsequently accepted.

Construction commenced in September 1971 and proceeded under plans and specifications received from the Joint Venture. As construction progressed it became clear that the cost of fixtures and other materials was going to be higher than M & M had planned. M & M submitted several proposed written change orders. Some were accepted by the Joint Venture, and a larger number were rejected. The alleged reason for the rejection of these change orders embodies the heart of the controversy in this case. M & M contends that the costs were higher than it had anticipated because the Joint Venture required certain fixtures which were different and more costly than had been previously agreed to. The Joint Venture contends that the work M & M wanted to claim as different was actually a part of the original criteria and, therefore, not a change.

M & M was paid for its work on the job in the following way. Approximately once a month, beginning in October 1971, McGinn would call Manning and relate the labor and material costs incurred to date. A contractor's affidavit and lien waiver would be executed and sent, and a check therefor would be received approximately two weeks later. A total of over $714,000 was eventually paid by the Joint Venture to M & M. M & M claims an additional $147,500 is due it. The trial court found in favor of the counterdefendants, holding they had not proved the existence of a contract theory which would allow recovery.

On appeal, two issues are raised: (1) whether the trial court abused its discretion in barring exhibits 15 and 16 as a discovery sanction; and (2) whether the judgment entered by the trial court dismissing M & M's counterclaim was contrary to the manifest weight of the evidence. We affirm.

The first issue on appeal is whether the trial court abused its discretion in barring exhibits 15 and 16 as a discovery sanction. Exhibit 15 contained calculations of material and labor costs, taxes, overhead and profit for the proposed Mall job. Exhibit 16 was a report on the Belscot project and contained the types of equipment needed for the job along with the costs of the Belscot job. During the course of pretrial discovery, the following interrogatory was posed to M & M.

"Identify all documents and specifications upon which M & M

relied in making its proposal identified as Exhibit C attached to your Second Amended Counterclaim.

ANSWER:

A sketch, and a list of square feet and power capacities."

A production request made prior to trial requested "Any written document allegedly furnished to these defendants or either of them stating or describing the regular overhead or profit changes of M & M Electric Company in 1971." Exhibits Nos. 15 and 16 were never produced in response to the request nor were they mentioned in other interrogatories or depositions.

At trial, M & M attempted to introduce them into evidence. M & M's theory of recovery on the contract was that the work on the Mall was similar to the work on Belscot and that the contract price was based on this. They therefore claimed that the two exhibits were critical in proving this contention. They argue that failure to permit them to be introduced into evidence fatally damaged their case. M & M argues that its failure to disclose them was inadvertent, and since they are of critical importance to its case, the trial judge abused his discretion in barring them from evidence. We disagree.

Supreme Court Rule 219(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 219(c)) provides that if a party fails to comply with an order entered under the discovery rules the court may impose sanctions for the failure. In the instant case, the documents were not revealed when they clearly should have been. The counterdefendants devised their defense around the documents that had been discovered. Then, at trial, M & M wished to introduce the exhibits as evidence of partially written conditions. Under these circumstances, we cannot say that the trial court's decision that the failure to comply with pretrial discovery was unreasonable and to therefore apply sanctions was an abuse of discretion.

M & M argues its failure to disclose was inadvertent and therefore cannot be considered unreasonable. We disagree. The test as to whether or not a failure to disclose is unreasonable does not rest upon whether the failure was intentional or inadvertent. The test is how important the undisclosed information is. Thus, M & M is caught on the horns of a dilemma. If the barred exhibits were as important to M & M's case as it claims they were, then the failure to disclose was unreasonable and there was no error in imposing the sanction. If, on the other hand, it was not so important and was merely foundational or cumulative, then its exclusion was not prejudicial. Therefore, we find no reason to reverse on this ground.

M & M's second issue on appeal is whether or not the judgment entered by the trial court dismissing the action was contrary to the manifest weight of the evidence. At the close of M & M's case the

counterdefendants moved for judgment pursuant to section 64(3) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 64(3)). The trial court granted the motions and judgment was accordingly entered. The trial court's decision may not be disturbed on appeal unless it is contrary to the manifest weight of the evidence. *City of Evanston v. Ridgeview House, Inc.* (1976), 64 Ill. 2d 40, 394 N.E.2d 399.

The trial court issued a written opinion in granting the counterdefendants' motion for judgment. In it the court stated that M & M's theory of recovery was that one of the contract terms was that the Mall was to be similar to the Belscot job and that since the Mall was not similar, the contract maximum was waived. Therefore, the court held that for M & M to recover, it had to prove that an essential term of the contract was the similarity of the Mall to the Belscot job. The trial court found that such a term did not exist, and we do not believe this holding was contrary to the manifest weight of the evidence.

The trial court heard extensive testimony and extensive cross-examination. McGinn testified that he saw prints for some of the stores in the Mall before going to New York, and these prints were referred to as a standard in the Allen specifications. Further, and most important, McGinn testified that Manning had told him the construction of the Mall would be different from the Belscot job. McGinn also admitted on cross-examination that the offer he made on August 7, which was accepted and became the contract, was based on materials he received from the Joint Venture, including lease criteria, prints of a J. C. Penney store and other information. Under these circumstances we cannot say the trial court's holding was contrary to the manifest weight of the evidence.

For the abovementioned reasons the judgment of the circuit court of Whiteside County is affirmed.

Affirmed.

SCOTT, P. J., and HEIPLE, J., concur.