FARLEY METALS, INC., n/k/a Farley, Inc., Plaintiff-Appellant, v. BARBER COLMAN COMPANY *et al.*, Defendants-Appellees (Barber Colman Company, Third-Party Plaintiff; National Cash Register Company *et al.*, Third-Party Defendants-Appellees).

First District (2nd Division)   No. 1—93—1047

Opinion filed November 29, 1994.—Rehearing denied February 16, 1995.

Clausen, Miller, Gorman, Caffrey & Witous, P.C., of Chicago (James T. Ferrini, of counsel), for appellant.

Johnson & Bell, Ltd., of Chicago (William V. Johnson, Michael B. Gunzburg, Thomas H. Fegan, and Mindy Kallus, of counsel), for appellee Barber Colman Company.

Dowd & Dowd, Ltd., of Chicago (Michael G. Patrizio and Patrick J. Ruberry, of counsel), for appellee Westronics, Inc.

Kiesler & Berman, of Chicago (Clinton J. Feil and Edward L. Cooper, of counsel), for appellee Hyre Electric Company.

JUSTICE SCARIANO delivered the opinion of the court:

On April 26, 1985, an explosion occurred at Tool & Engineering Company, a metal automobile component manufacturer in the City of Chicago. Tool & Engineering is a wholly owned division of plaintiff Farley Metals, Inc. The explosion resulted in the deaths of three employees, injured others, and caused extensive property damage. During the summer after the explosion, plaintiff's reconstruction manager removed certain artifacts[1] from the explosion and stored them with Industrial Storage Warehouse (Industrial) in Chicago.

Nearly two years later, on April 24, 1987, plaintiff sued numerous defendants, alleging negligence and strict liability. Plaintiff alleged that an exothermic[2] explosion occurred in one of its salt bath furnaces and that the explosion was caused by a mixture of potassium nitrate and sodium nitrate overheating and interacting with aluminum rods. Salt bath furnaces are utilized in the heat treatment of metals; aluminum stock is submerged in the salt bath furnace, heated to temperatures of up to 950 degrees Fahrenheit, and then placed in a "quench tank." Plaintiff alleged that the overheating resulted from defects in the defendants' manufacturing, installation and/or servicing of various products used in the treatment process.

In April 1987, plaintiff's law firm, Clausen, Miller, Gorman, Caffrey & Witous, P.C. (Clausen), entered into a contract with Industrial under which it was obligated to pay Industrial $383.99 per month for

---

[1] We follow the parties' designation in referring to the remains from the explosion as "artifacts."

[2] Exothermic is defined as "characterized by or formed with evolution of heat." Webster's Third New International Dictionary 798 (1981).

storing the artifacts from the explosion. On May 13, 1987, Circuit Court Judge Thomas E. Hoffman entered a protective order in which he ordered that no party could engage in destructive testing, relocation, or alteration of the artifacts from the explosion and that all parties receive timely notice and an opportunity to attend any inspections or testing of the artifacts. He also denied defendant Barber Colman's motion to have the artifacts placed with an independent entity.

By court order, management of the litigation was vested in three committees, the plaintiffs' committee (representing personal injury plaintiffs), the defendants' committee, and the Farley committee. (Farley was both a plaintiff and a defendant.) The court directed these committees to divide the cost of storing the artifacts equally between defendants and plaintiffs, with individual defendants and plaintiffs contributing on a *pro rata* basis. Although storage costs were shared, Clausen directed the preservation of the artifacts and was the only party with a key to the warehouse gate. Parties wishing to inspect the artifacts would contact Clausen, which then informed the other parties and authorized the visit with the warehouse. Clausen remained obligated to pay fees under the contract and advanced payments to Industrial.

In October 1989, one of the attorneys for the personal injury plaintiffs relocated various artifacts from Industrial to Record Copy Services, apparently because of the need for a heated warehouse. According to the affidavits of George Zelcs, a Clausen attorney, and Kevin McQuillan and Tomas Petkus, personal injury plaintiffs' attorneys, Zelcs informed Circuit Court Judge Myron T. Gomberg at a status call that Clausen was having difficulty collecting storage fees from the other parties. Upon questioning by the judge, only Zelcs, McQuillan, and Petkus indicated that they had an interest in further preservation of the artifacts left at Industrial. The judge then ordered that only the interested parties, *i.e.*, plaintiffs, were required to share in the cost of storing those artifacts. However, that ruling was not put in writing and the earlier order that costs be divided among the parties was not amended to reflect it.[3]

Defendants later denied stating that they were uninterested in preserving the artifacts remaining at Industrial. Clinton Feil, an attorney for defendant Hyre Electric Company, filed an affidavit dated September 16, 1992, stating that he objected to paying warehouse fees because Clausen had exclusive control over access to the

---

[3]A transcript from the proceedings at which the trial judge determined that plaintiffs would be responsible for payment of storage fees is not contained in the record.

warehouse and that he never "agreed or consented to the violation of the Court Order protecting the artifacts stored in the warehouse or to their destruction." Patrick Ruberry, an attorney for Westronics, also filed an affidavit, dated September 28, 1992, asserting that defense attorneys did not state in open court that they were uninterested in preserving the artifacts at Industrial and that he did not consent to the destruction of the artifacts, having discussed with other defense attorneys the possibility that a defect in the salt bath itself caused the explosion. In its reply brief supporting its motion to dismiss, defendant Barber Colman similarly denied ever expressing a lack of interest in preserving the artifacts.

Between 1987 and June 1991, Clausen was in arrears on the Industrial account several times and received six dunning letters and four notices of public auction. In each case, Clausen avoided foreclosure by paying the amount in arrears.

On August 19, 1991, defendant Barber Colman filed a third-party action against National Cash Register Company and NCR Corporation (NCR) for contribution. After encountering delays setting up an examination of artifacts at Industrial, NCR, in July 1992, deposed Michael Swade, the president of Industrial, and learned that the artifacts stored at his warehouse had been destroyed. Swade produced past-due invoices on the Clausen account and recalled that on July 2, 1991, Industrial's "lien foreclosure had been perfected" and a public auction was held in an attempt to sell the artifacts. No bids were made and Industrial subsequently sold the goods for scrap. Swade contended that Industrial complied with the Uniform Commercial Code's notice provisions before holding the auction. Plaintiff denied that it received notice of the public auction. The record contains a certificate of publication indicating that Industrial ran an ad regarding the auction in the Lincoln-Belmont Booster on June 12, 1991, and on June 19, 1991. A letter of notice of public sale also appears in the record, but it is unclear whether it was sent to Clausen.[4]

On December 12, 1991, Industrial sued Clausen for $13,427.60, monies it claimed were past due for storage fees. Clausen eventually paid Industrial $9,000 in settlement of its claim.

Upon learning that the artifacts stored at Industrial were destroyed, defendants filed motions for dismissal pursuant to Supreme Court Rule 219(c). (134 Ill. 2d R. 219(c).) Defendant Barber Colman attached to its motion the affidavit of its expert, Q.D. Mehrkam. Mehrkam opined that the explosion may have occurred

---

[4]The dispute between Clausen and Industrial is not before the court and we make no comment on its merits.

outside of the salt bath and that "a true understanding of the explosion could only be explained and understood by examining the equipment that was allegedly involved in the occurrence."

Following the hearing, the judge granted defendants' motions to dismiss.[5] Plaintiff filed a motion for reconsideration, but the court denied it on March 10, 1993. Plaintiff now appeals.

■ Plaintiff asserts that the trial court's ruling was an abuse of discretion because, since it had no knowledge of the impending destruction of artifacts, its conduct did not reflect contumacious disregard for the court's authority. Plaintiff also contends that such a drastic sanction was unwarranted because defendants were not prejudiced by the loss of the artifacts.

Modern discovery rules and procedures are designed to effectuate disclosure, for "truth is the heart of all discovery." (*Buehler v. Whalen* (1977), 70 Ill. 2d 51, 67, 374 N.E.2d 460, 467.) They embody a departure from viewing a trial as a "battle of wits," with surprise as a coveted weapon, and a move towards utilizing the trial as a joint endeavor to uncover the truth. (See *Krupp v. Chicago Transit Authority* (1956), 8 Ill. 2d 37, 40-41, 132 N.E.2d 532, 535; *Payne v. Coates-Miller, Inc.* (1979), 68 Ill. App. 3d 601, 606, 386 N.E.2d 398, 402.) Extensive disclosure of relevant material before trial facilitates the search for truth and comports with the recognition that "if justice is to be achieved, both sides must have an equal opportunity to prevail in terms of skill of counsel and available resources." 4 R. Michael, Illinois Practice § 31.3, at 104 (1989).

■ Supreme Court Rule 219(c) provides the trial court with discretionary authority to enter a wide range of orders, including dismissal with prejudice, when a party fails to comply with discovery orders. (134 Ill. 2d R. 219(c).) The trial court's broad discretion is limited only by the requirement that its order be just. (134 Ill. 2d R. 219(c).) The purpose of Rule 219(c) is to advance the discovery process rather than to punish the offending party. (*Kubian v. Labinsky* (1988), 178 Ill. App. 3d 191, 196, 533 N.E.2d 22, 25, *appeal denied* (1988), 123 Ill. 2d 559, 535 N.E.2d 402.) Nonetheless, our supreme court has advised that "[d]iscovery for all parties will not be effective unless trial courts do not countenance violations, and unhesitatingly impose sanctions proportionate to the circumstances." (*Buehler*, 70 Ill. 2d at 67, 374 N.E.2d at 467.) Imposition of sanctions, when appropriate, not

---

[5]The judge's November 24 order applied to six defendants. Three of those defendants subsequently prevailed on their summary judgment motions in eight wrongful death, personal injury and property damage cases which had been consolidated. Those defendants are not parties to this appeal.

only affects the party whose conduct prompted the sanction, it also acts as a deterrent to other litigants, encouraging them to protect their claims by abiding by discovery rules and orders. (See *National Hockey League v. Metropolitan Hockey Club, Inc.* (1976), 427 U.S. 639, 49 L. Ed. 2d 747, 96 S. Ct. 2778.) In fashioning just orders under Rule 219(c), trial courts must seek to achieve compliance with discovery and a trial on the merits. *Stegmiller v. H.P.E., Inc.* (1980), 81 Ill. App. 3d 1144, 1146, 401 N.E.2d 1156, 1158.

■ Some courts have declared that dismissal is proper only as a last resort when the offending party's actions "demonstrate a deliberate, contumacious and unwarranted disregard for the court's authority" and where a trial on the merits would prejudice the opposing party. (See, *e.g.*, *Vortanz v. Elmhurst Memorial Hospital* (1989), 179 Ill. App. 3d 584, 590, 534 N.E.2d 625, 629; *Kubian*, 178 Ill. App. 3d at 196, 533 N.E.2d at 25.) However, we have recognized that negligent or inadvertent destruction or alteration of evidence may result in a harsh sanction, including dismissal, when a party is disadvantaged by the loss. (See *Graves v. Daley* (1988), 172 Ill. App. 3d 35, 526 N.E.2d 679 (barring admission of evidence relating to an allegedly defective furnace when it had been destroyed with insurer's permission); *Stegmiller*, 81 Ill. App. 3d 1144, 401 N.E.2d 1156 (dismissing complaint for failure to produce allegedly defective pool filter after plaintiff inadvertently lost it and concealed the loss for over three years); see also *Marrocco v. General Motors Corp.* (7th Cir. 1992), 966 F.2d 220 (affirming a directed verdict when the defendant inadvertently destroyed an allegedly defective tire rim and side ring); see generally Potocki, Comment, *Policing Discovery Under Illinois Supreme Court Rule 219(c): A Search for Judicial Consistency*, 21 Loy. U. Chi. L.J. 973 (1990).) In cases where belated compliance with discovery is impossible due to the permanent loss of evidence, we believe that trial courts ought not dwell on whether the offending party's noncompliance was contumacious or deliberate, but rather should focus upon whether the imposition of less severe sanctions will promote the overriding concern for the search for truth. (See *Ideal Plumbing Co. v. Shevlin-Manning, Inc.* (1981), 96 Ill. App. 3d 207, 210, 421 N.E.2d 562, 565.) Thus, in determining the reasonableness of the noncompliance, the court may consider, *inter alia*, the importance of the information sought. *American Family Insurance Co. v. Village Pontiac-GMC, Inc.* (1992), 223 Ill. App. 3d 624, 627, 585 N.E.2d 1115, 1118.

■ Once the trial court orders sanctions under Rule 219(c), the sanctioned party has the burden of showing that its noncompliance was reasonable or warranted by extenuating circumstances. (*Kubian*,

178 Ill. App. 3d at 197, 533 N.E.2d at 26.) The imposition of sanctions will not be reversed by a reviewing court unless the trial court abused its discretion. *Barnes v. Black & Decker Manufacturing Co.* (1984), 135 Ill. App. 3d 700, 706, 481 N.E.2d 1200, 1204.

■ Plaintiff asserts that its lack of intent in destroying the artifacts should exonerate it entirely, or, in the alternative, require imposition of a less harsh sanction. However, as noted above, in our view, when crucial information or evidence is destroyed, the offending party's intent becomes significantly less germane in determining a proper sanction. A showing that plaintiff's noncompliance was reasonable does not hinge on intent; the critical issue is how important the undisclosed material was to the opposing party. See *Nehring v. First National Bank* (1986), 143 Ill. App. 3d 791, 800-01, 493 N.E.2d 1119, 1126; see also *Argueta v. Baltimore & Ohio Chicago Terminal R.R. Co.* (1991), 224 Ill. App. 3d 11, 21-22, 586 N.E.2d 386, 393, *appeal denied* (1992), 144 Ill. 2d 631, 591 N.E.2d 20.

Moreover, plaintiff was not blameless for the destruction of the artifacts. It received numerous notices and dunning letters, yet remained in arrears. We agree with the trial court that while there was no indication that plaintiff intentionally destroyed evidence, it was on notice that destruction was likely. Plaintiff was over $13,000 in arrears on a monthly bill of $383.99. As the trial court noted, plaintiff should have informed the court of any problems in obtaining payment from other parties long before Industrial disposed of the artifacts; its failure to do so resulted in the violation of the protective order.

■ Plaintiff next contends that defendants were not prejudiced by the loss of the artifacts. However, as we have previously observed, "[p]retrial access to documents, tangible objects or property is often crucial to amassing a claim or defense." (*American Family*, 223 Ill. App. 3d at 627, 585 N.E.2d at 1118.) In *American Family*, the owners of a car purchased from the defendant experienced a fire in their home, allegedly caused by the car. An investigator for their homeowner's insurance company opined that the fire resulted from a short circuit in a trunk light wire which he removed. The car owners later transferred title of the car to their automobile insurance company which allowed the car to be destroyed. Before trial on the plaintiffs' negligence and products liability claims, the trial court barred evidence regarding the car and subsequently granted the defendant's summary judgment motion. The plaintiffs contended that the court erred because evidence regarding the cause of the fire including two wires, photographs and testimony concerning the scene, was available.

We disagreed, finding that the plaintiffs should have known that potential defendants would want to examine the car, as their expert had done. The plaintiffs' conduct in allowing the destruction of the car denied the defendant the opportunity to gain first-hand knowledge regarding its condition. Furthermore, we recognized that the physical object in its condition after the fire may have been more persuasive and instructive to a jury than photographs or testimony. We also found that the absence of a court order to preserve the evidence was inconsequential under the circumstances. See *American Family*, 223 Ill. App. 3d at 626-27, 585 N.E.2d at 1118.

*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 473 N.E.2d 444, relied upon by the trial court, is also on point. The *Ralston* plaintiff sued the defendant automobile manufacturer under a theory of strict liability after suffering injuries in a car accident, alleging design defects in the car's seat belt. The trial court entered two protective orders barring destructive testing on the seat belt and requiring the preservation of the seat belt assembly. In violation of those orders, the plaintiff's expert disassembled and examined the seat belt. Following an evidentiary hearing, the court granted the defendant's motion to bar evidence of the seat belt's condition and its subsequent motion for summary judgment. We affirmed, noting that "preservation of the allegedly defective product, if possible, is of the utmost importance in both proving and defending against a strict liability action." *Ralston*, 129 Ill. App. 3d at 1057, 473 N.E.2d at 449; see also *Shelbyville Mutual Insurance Co. v. Sunbeam Leisure Products* (1994), 262 Ill. App. 3d 636, 641, 634 N.E.2d 1319, 1323.

In the case at bar, the judge, who had been involved with this case for over a year, held an extensive hearing on the subject of prejudice culminating in 91 pages of transcript. We find that the record fully supports his conclusion that defendants were severely prejudiced by the destruction of the artifacts.

Despite the numerous inspections, defendants explained to the trial court that they were denied an opportunity to, perhaps, establish a complete defense by showing that the explosion occurred outside of the salt bath. Defendants maintained that the inspections were limited to certain items, or were conducted merely to familiarize them with the artifacts. Barber Colman did not retain Mehrkam until February 1992, approximately six months after the artifacts had been destroyed. Without the salt bath artifacts, it was at a disadvantage in evaluating Mehrkam's theory. Hyre Electric's counsel indicated that he had only recently received plaintiff's experts' answers to Rule 220 interrogatories. He claimed that without access to the destroyed artifacts he could not disprove plaintiff's case or show that another defendant was at fault.

Counsel for third-party defendant NCR noted that two plaintiffs' experts had conducted metallurgical analyses on samples drawn from the artifacts which were stored at Industrial. Based upon these tests, seven plaintiffs' experts had concluded that the explosion occurred within the salt bath. Without access to the artifacts, he simply did not know if his experts could refute that theory.

Plaintiff contended that all parties, including plaintiff, were forced to rely on those test results in addition to photographs and other existing evidence, implying that there was consequently no inherent unfairness in the situation. Upon questioning by the court, Clausen conceded that "[s]ome materials that were under my control have been destroyed" and that the materials preserved were beneficial to plaintiff.

The judge carefully considered the nature of the discovery violation and its potential prejudicial effect on defendants' case. He stated

"I'm going to tell you very frankly that what I have been trying to do not just today but for several weeks is trying to weigh everything. *** I think that a Rule 219(c) motion calls for the application of equity and equitable principles in deciding such a motion, and what I have attempted to do here is to make sure I understand what it is that anybody lost by the destruction of this evidence."

He found that the 16 inspections by defendants were done for limited purposes, and without the knowledge that "they had better get this stuff inspected now or they're never going to get a chance because it's going to be destroyed *** without notice to them." The judge explained:

"[I]t seems to me that by the destruction of this evidence, an opportunity was lost on the part of the defendants, an opportunity to have their experts take a look at these materials at a time suitable to them.

* * *

It is my view that the defendants have lost something that they cannot recover, and that's the opportunity to prepare their case against Farley Metals."

After granting defendants' motion, the judge made clear that he was aware of the severity of the sanction:

"I will say one other thing. This is not easy, and its not something I'm pleased about having to do. It's not something I would do without a great deal of thought and reflection, and I think I'm aware of the consequences of what I'm doing, but I think it's the right thing to do."

We find no abuse of discretion in the trial judge's determination

that defendants were prejudiced by the destruction of the artifacts at Industrial. The materials plaintiff alleges are defective remain available while the remnants of the salt bath furnaces which defendants claim may have caused the explosion because of defects or poor maintenance are forever gone. Mehrkam's theory may, indeed, be unfounded, as plaintiff claims. However, without the artifacts, defendants are forced to rely upon secondary evidence and plaintiffs' experts' analyses in exploring that theory. The unfairness is obvious. Moreover, our trial courts are not required to countenance negligent disregard for their orders with any more indulgence than they tolerate deliberate disobedience of orders. Thus, plaintiff's violation of the protective order, whether inadvertent or deliberate, warranted a severe sanction.

Plaintiff relies on a recent second district case, *H&H Sand & Gravel Haulers Co. v. Coyne Cylinder Co.* (1994), 260 Ill. App. 3d 235, 632 N.E.2d 697, in which the court reversed the trial court's order barring evidence. There, the plaintiff filed suit after a fire destroyed its building. Its expert conducted destructive tests on an allegedly defective cylinder valve and destroyed certain artifacts remaining from the fire after determining that they were not the cause. The plaintiff later amended its complaint to add the defendant cylinder manufacturer. Upon the defendant's Rule 219(c) motion, the trial court barred certain evidence because of the plaintiff's expert's actions even though the defendant's expert stated that he would not have tested the cylinder valve.

The second district distinguished *American Family* and *Graves* by noting that in those cases the allegedly defective product had been completely destroyed and that in those cases the destroyed evidence was the only item alleged to have caused injury. The appellate court conceded that examination of the cylinder as it existed immediately following the fire would have been "helpful in establishing a defense with greater certitude" but found that the defendant's claim of prejudice had been "diffused" when its own expert saw no value in testing the cylinder. (*H&H*, 260 Ill. App. 3d at 246, 632 N.E.2d at 704.) Although the defendant rested its claim of prejudice on the destroyed evidence as well as the cylinder's alteration, the court found that the defendant could present a defense through the testimony of its expert and its designers, manufacturers and installers. Since the plaintiff did not deliberately destroy relevant evidence, and a trial on the merits was possible, the court held that the trial court had abused it discretion in barring the evidence. *H&H*, 260 Ill. App. 3d at 247-48, 632 N.E.2d at 705-06.

The *H&H* court refused to require plaintiff to "take extraordinary

measures to retain and preserve items which were not relevant to either of the parties at the time they were destroyed." (*H&H*, 260 Ill. App. 3d at 247, 632 N.E.2d at 705.) In so doing, the court appears to have used the plaintiff's good faith as a gauge for measuring prejudice to the defendant and, to that extent, we decline to follow its reasoning.

Unlike *H&H*, in the present case, plaintiff's conduct resulted in the violation of a court order. Moreover, plaintiff was aware that there were numerous defendants and that discovery was ongoing. While plaintiff claims that defendants stated that they were uninterested in continued preservation of the artifacts, defendants refute that contention. Moreover, as defendants point out, plaintiff at no time moved to vacate the protective order.

The above analysis applies with greater force to third-party defendant NCR, which never had an opportunity to evaluate or inspect the destroyed evidence because it was brought into the case after the evidence had been disposed of. Plaintiff asserts that because third-party plaintiff Barber Colman's temperature control components containing the chip manufactured by NCR were preserved, NCR has suffered no prejudice by the loss of other evidence. However, NCR's defense should not depend on what plaintiff deems to be essential evidence.

Other cases plaintiff relies on are inapposite. Unlike the case at bar, in those cases dismissal was inappropriate because the sanctionable conduct did not preclude preparation of a defense or could be cured through adequate, albeit belated, disclosure. See *Wyrick v. Time Chemical, Inc.* (1989), 191 Ill. App. 3d 1041, 548 N.E.2d 524; *Nehring*, 143 Ill. App. 3d 791, 493 N.E.2d 1119; *White v. Henrotin Hospital Corp.* (1979), 78 Ill. App. 3d 1025, 398 N.E.2d 24.

■ Plaintiff next argues that the court erred in failing to conduct an evidentiary hearing on prejudice as requested in its motion to reconsider. Plaintiff attached to its motion the affidavits of three experts, each of whom opined that Mehrkam's theory that the explosion could have occurred outside of the salt bath when chemicals leaked into the furnace bottom was unfounded. Also attached were correspondence between Industrial and Clausen regarding its overdue accounts and Zelcs' affidavit denying that he received notice from Industrial that it would conduct a public sale of the artifacts in July 1991.

In response, defendant Barber Colman filed an additional affidavit from Mehrkam refuting plaintiffs' experts and stating that his earlier recommendation of "a metallurgical investigation of the artifacts[ ] is still a valid approach to determine the cause of the

explosion and would have aided materially in reaching a factual conclusion." The trial court denied the motion for reconsideration.[6]

Whether to grant a motion for reconsideration is a determination resting within the trial court's discretion, subject to reversal only upon an abuse of discretion. (*Greer v. Yellow Cab Co.* (1991), 221 Ill. App. 3d 908, 915, 582 N.E.2d 1292, 1296.) The purpose of a motion for reconsideration is to apprise the trial court of newly discovered evidence, a change in the law, or errors in the court's earlier application of the law. *Gardner v. Navistar International Transportation Corp.* (1991), 213 Ill. App. 3d 242, 248, 571 N.E.2d 1107, 1111, *appeal denied* (1991), 141 Ill. 2d 539, 580 N.E.2d 112.

In the case at bar, plaintiff's motion for reconsideration merely reiterated its earlier arguments before the court. As such, it did not bring newly discovered evidence to the court's attention, indicate a change in the law or illustrate that the judge misapplied the law when he exercised his discretion under Rule 219(c). The addition of its experts' affidavits cannot be characterized as newly discovered evidence. See *Gardner*, 213 Ill. App. 3d at 248, 571 N.E.2d at 1111.

Plaintiff contends that Mehrkam's second affidavit belies any claim of prejudice because he stated there that an examination of the artifacts would have "aided" in determining the cause of the explosion but not that such examination was necessary. The judge placed less significance on Mehrkam's statement, commenting that "[i]t was a little ambiguous, I will agree, but I think that if Mehrkam had said in that affidavit that I will tell you that these had to be used, you would have argued that it was a conclusion and move [*sic*] to strike that portion of his affidavit." The judge also reemphasized his finding that there had been "severe prejudice" in this case. Plaintiff notes that before the trial court in *Ralston* issued its order, it selected an independent expert to evaluate the effect of the unauthorized testing done by the plaintiff's expert on an allegedly defective seat belt. The court also ordered the plaintiff's expert to be redeposed regarding the specific actions involved in his examination of the seat belt. *Ralston*, 129 Ill. App. 3d at 1053, 473 N.E.2d at 447.

Plaintiff argues that a similar evidentiary hearing was required in the case at bar. However, plaintiff did not request such a hearing from the trial judge. Plaintiff suggests that the court could have

---

[6]On appeal, in violation of Supreme Court Rule 341(e)(7), plaintiff does not present argument specifically supporting its contention that denial of its motion for reconsideration should be reversed by this court. (See 134 Ill. 2d R. 341(e)(7).) Plaintiff merely argues that an evidentiary hearing was required.

heard testimony from every expert involved in the case and allowed it to depose Mehrkam before making an "assumption of prejudice." Plaintiff thereby ignores the fact that in the hearing on the motion, the court focused on the issue of prejudice. Additionally, unlike *Ralston*, in the instant case the evidence bearing on defendants' defense was not merely altered, it was disposed of. Only the artifacts which plaintiff contends are defective remain preserved.

Accordingly, based upon the foregoing, we affirm both the trial court's dismissal of plaintiff's complaint and its denial of plaintiff's motion for reconsideration.

Affirmed.

DiVITO, P.J., and McCORMICK, J., concur.