### TRAVELERS INSURANCE COMPANY

v.

### DAYTON POWER AND LIGHT COMPANY.

Court of Common Pleas of Ohio,
Miami County,
General Division.

No. 95–169.

Decided Jan. 23, 1996.

**18**

*Ulmer & Berne, Alexander M. Andrews* and *Carl A. Anthony,* for plaintiff. *Dinsmore & Shohl* and *Scott R. Thomas,* for defendant.

JEFFREY M. WELBAUM, Judge.

On May 18, 1993, a fire broke out in electrical equipment owned and maintained by Hammer Graphics, Inc., a printing company in Piqua, Ohio. Two items

of equipment were damaged in the fire, the transformer and the transition cabinet. The transformer takes electricity from defendant Dayton Power and Light Company's ("DP & L's") distribution line and reduces the voltage to a level appropriate for industrial machinery. The electricity is then carried by a small number of large cables to the transition cabinet. There the electricity is distributed among a large number of smaller wires that run from the transition cabinet to individual items of equipment in the Hammer Graphics plant.

Hammer Graphics contacted its insurer, plaintiff Travelers Insurance Company ("Travelers"), regarding the loss. On May 19, 1993, Travelers asked S.E.A., Inc. ("SEA") to examine the damage and determine the cause of the failure. On May 20, 1993, Jeffrey Lindsey of SEA inspected the transition cabinet; he examined the transformer the following day. In his report, dated June 16, 1993, Lindsey concluded that the fire was probably caused by the alleged failure of DP & L employees to sufficiently tighten a bolt when they connected new cables to the transformer in 1991.

According to Lindsey, the "key evidence" supporting his theory of the fire's origin was arc damage he found on one of the four "pads" where cables were connected to the transformer. Lindsey never inspected the equipment inside the transition cabinet to determine whether similar evidence of arc damage was also present there. Evidence of arc damage was likely to be found there because photographs of the transition cabinet taken shortly after the fire indicate that numerous cable connections had melted away inside the transition cabinet, just as they had at the one location inside the transformer. The transition cabinet was damaged much more severely than the transformer. The photographs, however, are inadequate for the purpose of detecting arc damage now in the absence of the transition cabinet itself.

Hammer Graphics disposed of the transition cabinet within days of the fire, after being told by Lindsey that he did not need it. Although DP & L personnel were on the scene shortly after the fire was discovered, their purpose there was to restore power to Hammer Graphics as quickly as possible, not to conduct a fire investigation. DP & L was afforded the opportunity to inspect the transformer. The evidence is uncontroverted that the transformer was internally undamaged.

Travelers paid $102,751.54 to Hammer Graphics for the fire damage. On May 16, 1995, two days before the statute of limitations would have run, Travelers brought suit against DP & L. Consistent with Lindsey's report, Travelers claims the fire was caused by DP & L's negligence in performing the 1991 work.

Plaintiff contends that the doctrine of spoliation of evidence applies only to products liability cases and not to this case, where the cause of action sounds only in negligence. The doctrine is not limited to products liability cases.

*Transamerica Ins. Group v. Maytag, Inc.* (1994), 99 Ohio App.3d 203, 650 N.E.2d 169; *Travelers Ins. Co. v. Knight Elec. Co.* (Dec. 21, 1992), Stark App. No. CA–8979, unreported, 1992 WL 398201.

In this case there was no protective order prohibiting destruction of the transition cabinet at the time of its disposal. This is a consideration when balancing the equities in this case. However, defensive spoliation principles do apply by means of a motion under Civ.R. 37 requiring the court to fashion a just remedy. *Cincinnati Ins. Co. v. Gen. Motors Corp.* (Oct. 28, 1994), Ottawa App. No. 94–OT–017, unreported, 1994 WL 590566; *Bright v. Ford Motor Co.* (1990), 63 Ohio App.3d 256, 578 N.E.2d 547; *Russo v. Goodyear Tire & Rubber Co.* (1987), 36 Ohio App.3d 175, 521 N.E.2d 1116; *Cincinnati Ins. Co. v. Synergy Gas, Inc.* (Ala.1991), 585 So.2d 822; *Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Products Co.* (1994), 262 Ill.App.3d 636, 199 Ill.Dec. 965, 634 N.E.2d 1319; *Graves v. Daley* (1988), 172 Ill.App.3d 35, 122 Ill.Dec. 420, 526 N.E.2d 679.

■ The court further finds that at the time there was no intent on the part of plaintiff or its agent to willfully destroy evidence for the purpose of depriving defendant of evidence at trial. However, negligent or inadvertent destruction of evidence is sufficient to trigger sanctions where the opposing party is disadvantaged by the loss. *Farley Metals, Inc. v. Barber Colman Co.* (1994), 269 Ill.App.3d 104, 109, 206 Ill.Dec. 712, 716, 645 N.E.2d 964, 968. Where the loss of evidence is belated, a court should not dwell on intent but focus on the importance of information, legitimately sought, that is unavailable as a result of the destruction of evidence. *Farley Metals, Inc., supra.* The intent of the offending party, the level of prejudice, and the reasonableness of the offending party's action must all be balanced in fashioning a just remedy. The relative importance of the information denied the opposing party bears directly on the reasonableness of such party's action and the resulting prejudice. The issue arises whether it was foreseeable that the evidence made unavailable would be relevant and, therefore, whether it would fall within the scope of items worthy of retention for inspection. *Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Products Co., supra.* The relative importance of the evidence in addition to its mere relevance must be weighed in fashioning a just result. The loss of an essential item of evidence is far more prejudicial than a mere relevant piece of evidence. Almost any item found at a fire scene is arguably relevant. Obviously, not all such items are foreseeably essential or foreseeably relevant. Not all items arguably relevant at a fire scene may practically be retained. Consequently, the court must determine the reasonableness of the offending party's action in fashioning a just result.

The court finds that at the time the transition cabinet was made unavailable, plaintiff's agent knew or should have known that the transition cabinet would be

material in a lawsuit. A lawsuit was anticipated. A mental awareness by plaintiff or its agent that future litigation would likely result is present in this case. The amount of the claim involved, the nature of the defendant, the prompt response by plaintiff sending a fire investigator to the scene to determine the likely cause of the fire, and the other facts and circumstances of the case, all weigh in favor of this awareness. The importance of the transition cabinet should have been obvious. The fire damage to the transformer and the transition cabinet coupled with plaintiff's investigator's expert opinion that DP & L's transformer was the cause of the fire made it foreseeable that future litigation was likely to result. DP & L should have been provided notice to inspect the transition cabinet before it was made unavailable.

It may very well be that plaintiff's agent did not suspect that the transition cabinet was the cause of the fire. However, the importance of the transition cabinet in resolving fault was foreseeable from a neutral point of view. The transition cabinet and the transformer were both damaged. The transition cabinet and transformer were inextricably connected in function, location, and damage, to the extent that a reasonable investigator would have foreseen that the transition cabinet should have been inspected, retained, and/or inspected by DP & L prior to its disposition. A similar issue was analyzed in *Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Products Co., Inc., supra,* 262 Ill.App.3d at 638, 199 Ill.Dec. at 968, 634 N.E.2d at 1322. In *Shelbyville,* plaintiff's expert discarded a wooden grill frame that could have provided alternate sources of the cause of the fire. Plaintiff's experts determined that defendant's grill assembly was the cause of the fire and discarded the wooden frame which held the grill. Defendant's experts were deprived of the opportunity to examine the wooden frame, which the court concluded may well have provided alternate causes of the fire, and could have reasonably rebutted the opposing expert's theory and bolstered the defense opinions as to the alternate sources of the fire. The court held that defendants were effectively foreclosed from possible affirmative defenses of what may have been the actual cause of the fire. 262 Ill.App.3d at 638, 199 Ill.Dec. at 970, 634 N.E.2d at 1324.

Although not all items arguably relevant at a fire scene are essential to retain for inspection by opposing party's experts, when the item made unavailable by the offending party is inextricably connected to the evidence which the offending party believes to have caused the fire and when its importance is foreseeable, such evidence should be retained for inspection until the opposing party has a reasonable opportunity, after notice, to conduct an examination by its experts. *Hirsch v. Gen. Motors Corp.* (1993), 266 N.J.Super. 222, 628 A.2d 1108.

Plaintiff astutely argues that the presence of DP & L at the scene of the fire prior to disposal of the transition cabinet precludes the applicability of sanctions

in this case. The affected party's availability and opportunity to inspect prior to disposal of the evidence are a factor to consider in fashioning a just and equitable remedy. In *Am. Family Ins. Co. v. Village Pontiac–GMC, Inc.* (1992), 223 Ill.App.3d 624, 166 Ill.Dec. 93, 585 N.E.2d 1115, the court held that the affected party's receipt of a phone call from an irate consumer concerning the loss of the consumer's car by fire was not sufficient to put the affected party on notice that it should immediately inspect the car. Defendant would have a responsibility to properly inspect the evidence when it has been given notice of impending litigation or circumstances, where such party may reasonably expect litigation.

■ Such a duty would arise at the time an affected party was placed on notice that the offending party's expert had determined that the affected party was at fault or when other circumstances arose that would prompt the offending party to conclude it would likely be involved in a lawsuit on the issue. In *Hirsch v. Gen. Motors Corp., supra,* 266 N.J.Super. at 254, 628 A.2d at 1124, the affected party defendant was on notice about a fire that destroyed plaintiff's car. Plaintiff met with defendant's representative, but defendant was not informed that plaintiff's expert had concluded that the car had caused the fire. Months later defendant first became aware of its alleged liability when plaintiff's insurance company apprised defendant of the result of its investigation and of its claim for damages. The court concluded that informing defendant of the fire incident of undetermined cause and of a claim submitted to insurer at a meeting, without more, did not put the defendant on notice that it was at fault and that it could expect a lawsuit in the near future.

In that case, the plaintiff's insurance company's expert concluded that General Motors was at fault, failed to inform General Motors of such determination, and then disposed of the automobile without prior notice to General Motors and without permitting General Motors to inspect the vehicle. In the foregoing cases, months passed between the offending party's expert's determination of fault by the affected party and the disposal of the important evidence. In the present case, the evidence was made unavailable within a few days. Although it would have been prudent for a DP & L representative to inspect the transition cabinet immediately, such lost opportunity is factored into the magnitude of the sanction imposed.

■ It is noteworthy that in the foregoing cases the affected defendants were not actually on the scene immediately after the fires. However, it is clear that DP & L as an affected defendant was not put on notice of plaintiff's determination of DP & L's alleged liability and was not given sufficient notice of any need to quickly inspect the transition cabinet prior to its disposal. At the time the transition cabinet was made unavailable, DP & L was significantly less able to reasonably expect resulting litigation by not having been placed on notice that

plaintiff's expert had determined DP & L's fault. Plaintiff cannot clean its hands by shifting the burden to preserve evidence to defendant without having given defendant adequate time to react by immediate or prompt inspection. *Am. Family Ins. Co. v. Village Pontiac–GMC, Inc., supra,* 223 Ill.App.3d 624, 166 Ill.Dec. 93, 585 N.E.2d 1115.

Both parties cite hindsight as authority against the other. Although plaintiff's expert was primarily at fault, in hindsight, defendant's personnel who responded at the fire scene are not entirely blameless for failing to inspect the transition cabinet. Foreseeability and reasonableness must be applied to both parties, based on the different levels of information known by each at the time. Although plaintiff is primarily at fault, the court must consider defendant's lost opportunity. DP & L's hands are somewhat smudged. It had personnel at the scene immediately after the fire who took pictures of the transition cabinet and had the opportunity to exercise prudence by immediately inspecting the transition cabinet. These facts relate to intent, foreseeability, level of prejudice, and overall reasonableness.

These facts are distinguishable from those found in *Graves v. Daley, supra,* and *Am. Family Ins. Co. v. Village Pontiac–GMC, Inc., supra.* In those cases, the plaintiffs disposed of the entire defective product that was the only item alleged by either party to have caused the damage and the sole theory of liability. This fact, and the fact that defendant failed to exercise a high level of prudence by not inspecting the transition cabinet more closely when its personnel were at the scene, defuses the level of prejudice and duty imposed on plaintiff to retain the evidence.

The court could find no case where extreme sanctions were imposed when the affected party had representatives at the scene immediately after the fire and had even a brief opportunity to inspect the subsequently unavailable evidence. It is clear from the foregoing that defendant has been prejudiced by the unreasonable disposal of evidence important to defendant's defense. The deposition testimony establishes that it is likely the defendant was deprived of favorable evidence not otherwise obtainable as a result of the disposal of the transition cabinet.

The failure to preserve evidence in this case is sanctionable under *Bright v. Ford Motor Co.,* 63 Ohio App.3d 256, 578 N.E.2d 547. However, the court must impose a sanction that is proportionate to the seriousness of the infraction under the facts of this particular case. The court is aware that it should impose the least severe sanction that effectively removes prejudice caused by the sanctioned party's wrongdoing. *Transamerica Ins. Group v. Maytag, Inc.,* 99 Ohio App.3d 203, 650 N.E.2d 169.

In fashioning a remedy that is fair and equitable, the court focuses on the effect of the disposal and how it has adversely affected defendant. The court in fashioning a remedy intends to place both parties on a level playing field. In formulating a remedy, the court notes that defense experts have not been prevented from forming an opinion on the cause of the fire. The court notes that the transition cabinet would have been helpful to bolster the opinions of the defense expert and refute possible speculation on behalf of plaintiff's expert. The court notes that although photographs were taken of the transition cabinet, they are of no assistance in determining whether the fire was caused by the transition cabinet. The court finds that the defense experts will be prevented from buttressing their conclusion that the accident happened because of the defective transition cabinet without testing, tangible exhibits, or definitive photographs.

Attempting to quantify the level of prejudice suffered by defendant is difficult. The court's purpose is remedial under Civ.R. 37. The court's purpose is to eliminate the prejudicial effect of the failure of discovery by restoring the balance that failure has denied defendant. Public policy favors adjudication on the merits whenever possible. *Transamerica Ins. Group v. Maytag, Inc.,* and *Cincinnati Ins. Co. v. Synergy Gas, Inc., supra.*

As a result of the foregoing, it is the order of the court that the deposition testimony of Lindsey, expert for plaintiff, shall be stricken except for purposes of ruling on this motion for summary judgment. Second, Lindsey is precluded from testifying at trial. Third, no witness may rely on the observations of Lindsey in forming or expressing opinions in this case. Fourth, should the matter proceed to trial, upon request, the jury shall be instructed that if it finds that any destroyed evidence would be significant in reaching a conclusion as to the cause of the accident, it should infer that the evidence destroyed would have disclosed facts adverse to the party who destroyed it. Finally, the court finds that considering the foregoing factors present in this case, fairness requires that plaintiff as the sanctioned party should have the opportunity to defend against defendant's motion for summary judgment when it knows the state of the evidentiary record after the court's ruling on the sanction motion. Accordingly, defendant's motion for summary judgment against plaintiff is overruled.

The parties are permitted to file motions for summary judgment on the state of the evidentiary record of this case as it exists as a result of this ruling and any future discovery conducted pursuant to the scheduling order of this court filed August 25, 1995.

IT IS SO ORDERED.

*Judgment accordingly.*