STATE FARM FIRE & CASUALTY CO., as Subrogee of Richard Lutz, Jr. and Patricia Lutz, Plaintiffs,

v.

FRIGIDAIRE, A DIVISION OF GENERAL MOTORS CORPORATION, Defendant.

No. 92 C 141.

United States District Court, N.D. Illinois, E.D.

June 17, 1992.

Louis Anthony Varchetto, Wylie, Mulherin, Rehfeldt & Varchetto, Wheaton, IL, for plaintiffs.

Thomas J. Burke, Jr., John Thomas Williams, Lord, Bissell & Brook, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This diversity action arises out of the purported malfunction of a Frigidaire dishwasher. Plaintiff State Farm Fire and Casualty Company ("State Farm"), as subrogee of Richard Lutz, Jr. and Patricia Lutz, brings this lawsuit against Frigidaire, a division of General Motors Corporation, alleging negligence and strict liability in tort. Presently before the court is Frigidaire's motion to dismiss State Farm's complaint, or, in the alternative, to bar State Farm from presenting any evidence, direct or circumstantial, regarding the condition of the allegedly defective dishwasher. For the reasons set forth below, the motion to dismiss is granted.

### I. Motion to Dismiss Standard

A motion to dismiss should not be granted unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *see also Beam v. IPCO Corp.*, 838 F.2d 242, 244 (7th Cir.1988); *Ellsworth v. City of Racine*, 774 F.2d 182, 184 (7th Cir.1985), *cert. denied*, 475 U.S. 1047, 106 S.Ct. 1265, 89 L.E.2d 574 (1986). We take the "well-pleaded allegations of the complaint as true and view them, as well as reasonable inferences therefrom, in the light most favorable to the plaintiff." *Balabanos v. North Am. Inv. Group, Ltd.*, 708 F.Supp. 1488, 1491 n. 1 (N.D.Ill.1988) (citing *Ellsworth*).

### II. Background

On December 3, 1989, Ronald and Patricia Lutz' home was damaged by fire. The residence was insured against certain risks and perils, including loss due to fire, pursuant to State Farm policy number 13–18–0076–8. On December 4, 1989, State Farm adjuster Val Thompson began an investigation into the cause of the fire, photographing and performing a 1½ hour inspection of the scene. Suspecting that the fire started in the dishwasher, Thompson specifically instructed Mrs. Lutz not to dispose of the appliance.

Thompson, on December 11, 1989, contacted Carl Frank of Keller–Webb Associates, a professional engineer, to examine the Lutz home. During the course of the conversation, Thompson informed Frank that he believed the dishwasher was the origin of the fire. Based on this information, Frank recognized the possibility of litigation against the dishwasher manufacturer, Frigidaire. Frank performed two separate 1½ hour inspections of the Lutz abode, each without notifying Frigidaire. During the first inspection, on December 11, 1989, Frank photographed and performed a complete examination of the scene, identifying the dishwasher as the most likely cause of the fire. Frank returned for a second inspection of the Lutz home on December 15, 1989, at which time he focused on the lower right front corner of the dishwasher. From this location, Frank cut out portions of the wiring harness, including the switch and switch mounting bracket, which he has retained. Immediately following his second examination, Frank telephoned Thompson, advising him that the fire originated in the lower right hand corner of the dishwasher as a result of a short in an unidentifiable harness wire. Frank's conclusion later was embodied in a report submitted to State Farm, dated January 12, 1990.

According to Mrs. Lutz, following his inspections, Frank informed Mrs. Lutz that she could dispose of the dishwasher, there being "no need to save it anymore." Within a week, Mrs. Lutz did just that, rendering the dishwasher unavailable for inspection by Frigidaire. This action, the gravamen of which rests on the allegedly defective design and manufacture of the dishwasher, was filed on December 2, 1991, approximately two years after the fire.

### III. Discussion

As a threshold matter, this court is confronted with the choice of applying either Illinois or federal law to Frigidaire's current motion, a choice governed by *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny.

It is settled law that a federal court exercising diversity jurisdiction must apply "substantive" state law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); *Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1181–82 (7th Cir.1991); *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 637 (7th Cir.1991). As a necessary corollary, the *Erie* doctrine mandates that federal courts sitting in diversity apply federal "procedural" rules to the proceedings. *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965); *Simmons, Inc. v. Pinkerton's, Inc.*, 762 F.2d 591, 595 (7th Cir.1985); *W.E. O'Neil Const. Co. v. National Union Fire Ins. Co. of Pittsburgh*, 721 F.Supp. 984, 989 (N.D.Ill. 1989). Drawing a principled distinction between "substance" and "procedure," however, is an incorrigible task, as "[t]he line between [the two] shifts as the legal context changes." *Hanna*, 380 U.S. at 471, 85 S.Ct. at 1144; *Guaranty Trust Co. of New York v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945) ("Each implies different variables depending upon the particular problem for which it is used."). Nevertheless, in that "the outcome of [diversity] litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a [s]tate court," *Guaranty Trust*, 326 U.S. at 109, 65 S.Ct. at 1470, we can only conclude that the issue of State Farm's pre-suit duty to preserve material evidence is substantive and, as such, Illinois law governs.[1]

As often repeated by the Illinois courts, "[t]he preservation of an allegedly defective product is of utmost importance in both proving and defending against a strict liability action." *Graves v. Daley*, 172 Ill.App.3d 35, 38, 122 Ill.Dec. 420, 422, 526 N.E.2d 679, 681 (3d Dist.1988) (citing *Ralston v. Casanova*, 129 Ill.App.3d 1050, 85 Ill.Dec. 76, 473 N.E.2d 444 (1st Dist. 1984)). Accordingly, a plaintiff is obligated, under the penalty of sanctions, to preserve the allegedly defective product which it knew, or reasonably should have known, would be material in the contemplated product liability action. *American Family Ins. Co. v. Village Pontiac GMC, Inc.*, 223 Ill.App.3d 624, 627, 166 Ill.Dec. 93, 96, 585 N.E.2d 1115, 1118 (2d Dist.1992); *Graves*, 172 Ill.App.3d at 39, 122 Ill.Dec. at 423, 526 N.E.2d at 682. In *Graves*, two homeowners and their insurer brought a product liability action against a furnace manufacturer and seller to recover damages caused by fire. Following the fire, the insurer's expert inspected the premises and concluded that the cause rested with a defective condition in the furnace. Seeking to clear the debris and rebuild their house, the Graves disposed of the furnace with the permission of their insurer. Five months later, suit was filed despite the unavailability of the furnace. *Graves*, 172 Ill.App.3d at 36, 122 Ill.Dec. at 421, 526 N.E.2d at 680. Under these circumstances, the appellate court upheld an order barring all evidence, direct and circumstantial, relating to the condition of the furnace. *Id.* at 38, 122 Ill.Dec. at 422, 526 N.E.2d at 681. The court explained:

---

1. State Farm attempts to remove the present choice of law question from the purview of the *Guaranty Trust* "outcome determinative" test by arguing that the dispute is covered by Fed. R.Civ.P. 37(b)(2)(C), which provides:

   If a party or an officer, director, or managing agent of a party ... fails to obey an order to provide or permit discovery ... the court in which the action is pending may ... [enter] [a]n order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

   Rule 37(b)(2)(C), however, is not sufficiently broad to resolve the present issue and, as such, the framework established in *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965), is inapplicable. *See Walker v. Armco Steel Corp.*, 446 U.S. 740, 749–50, 100 S.Ct. 1978, 1985, 64 L.Ed.2d 659 (1980). As poignantly noted by Frigidaire, the issue at hand does not involve State Farm's failure to comply with a court order or with discovery requests *after* the suit was filed; rather, this court is faced with the question of State Farm's *pre-suit* duty to preserve material evidence.

The plaintiffs are not free to destroy crucial evidence simply because a court order was not issued to preserve the evidence. Further, the furnace was destroyed by plaintiffs after their expert had examined it and before suit was filed, thus, the court could not have issued a preservation order.... [T]he plaintiffs willfully caused the furnace to be destroyed with Western State's [the insurer's] approval. The plaintiffs and Western States had complete control of the furnace from the date of the fire.... Western States and the plaintiffs knew or should have known that a defective condition of the furnace, the item they allege caused the fire, was a crucial piece of evidence, and should have been preserved.

*Id.* at 38–39, 122 Ill.Dec. at 422–23, 526 N.E.2d at 681–82. Substituting the dishwasher in this case with the furnace in *Graves,* this court is faced with an identical factual scenario as described above. There is no question that State Farm knew the allegedly defective dishwasher would be material in this case. Immediately following the fire, State Farm hired an expert to inspect the Lutz home. That expert, after two meticulous examinations of the appliance, pinpointed the origin of the fire at the lower right hand corner of the dishwasher. Once its expert had completed the inspections, and prior to filing suit, State Farm allowed Mrs. Lutz to willfully dispose of the dishwasher—an appliance in the exclusive control of State Farm and the Lutzes.

That State Farm's expert cut the wiring harness, including the switch and switch mounting bracket, from the bottom of the dishwasher does not mitigate State Farm's failure to preserve the product itself. Indeed, Frank himself admitted that it is not possible to determine merely by looking at the scraps retained whether the damage to them was the cause or the result of the fire. Moreover, any photographs taken are not a sufficient substitute for the dishwasher in its original post-fire condition. As explained in *American Family Ins. Co.,* 223 Ill.App.3d at 627–28, 166 Ill.Dec. at 96, 585 N.E.2d at 1118 (citing *Nally v.*

*Volkswagen of Am., Inc.,* 405 Mass. 191, 198, 539 N.E.2d 1017, 1021 (1989)):

Plaintiffs were the only individuals with first-hand knowledge of the physical evidence which is far more probative under these circumstances in determining whether the [product] caused the fire than photographs and two wires taken from [the product]. The physical object itself in the precise condition immediately after an accident may be far more instructive and persuasive to a jury than oral or photographic descriptions. As a matter of sound public policy, an expert should not be permitted intentionally or negligently to destroy such evidence and then substitute his or her own description of it.

In sum, State Farm's conduct with regard to the destruction of the dishwasher—the product it alleges caused the fire—warrants sanction. In both *Graves* and *American Family Ins. Co.,* the sanction imposed by the Illinois courts was the bar of all evidence, direct and circumstantial, concerning the condition of the allegedly defective product. This sanction, however, is functionally equivalent to dismissal, as a plaintiff cannot make out a prima facie case of product liability or negligence in the absence of evidence regarding the condition of the product. *American Family Ins. Co.,* 223 Ill.App.3d at 629, 166 Ill.Dec. at 97, 585 N.E.2d at 1119. Accordingly, in an effort to preserve fair and orderly adjudication, we grant Frigidaire's motion to dismiss State Farm's complaint.

### IV. Conclusion

Failing to preserve the allegedly defective product which it knew would be material evidence in this product liability action, State Farm's complaint is hereby dismissed. It is so ordered.