SHELBYVILLE MUTUAL INSURANCE COMPANY, Plaintiff-Appellant, v. SUNBEAM LEISURE PRODUCTS COMPANY, Defendant-Appellee (M. Lyle Sims *et al.*, Plaintiffs).

Fifth District    No. 5—93—0371

Opinion filed June 10, 1994.

Douglas S. Dove, of Dove & Dove, of Shelbyville, for appellant.

James W. Ozog and David J. O'Connell, both of Momkus, Ozog & Mc-Cluskey, of Downers Grove, for appellee.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

Plaintiff, Shelbyville Mutual Insurance Company (insurance company), appeals from the trial court's orders granting motions to bar evidence and for summary judgment in favor of defendant, Sunbeam Leisure Products Company (Sunbeam). The issue raised by this appeal is whether the trial court abused its discretion by barring plaintiffs from presenting certain evidence in their product liability case. For reasons we will more fully explain, we affirm the orders of the trial court.

Plaintiffs, M. Lyle Sims and E. Lorene Sims (Mr. and Mrs. Sims), filed the original complaint in this case on March 14, 1991. They do not participate in this appeal, as the real party in interest and subrogee of Mr. and Mrs. Sims, the insurance company, was added as a party plaintiff on March 19, 1993, in plaintiffs' first amended complaint. The complaint alleged that on April 4, 1989, a gas grill owned by Mr. and Mrs. Sims and manufactured by Sunbeam was not reasonably safe in design or manufacture, and that as a direct and proximate cause of alleged defects, the grill caught fire and was destroyed along with other possessions.

After the parties conducted discovery for over a year, Sunbeam filed a motion to bar evidence, pursuant to Supreme Court Rule 219(c). (134 Ill. 2d R. 219(c).) Basically, the motion to bar evidence alleged that plaintiffs had lost, misplaced, destroyed, or spoiled parts of the grill alleged to be defective, and that, as a result, plaintiffs should be barred from presenting any testimony or evidence concerning the alleged defects in the grill or as to the cause and origin of the fire. Plaintiffs filed responses to the motion, and Sunbeam filed a reply to those responses. Both parties attached copies of certain pretrial discovery to the motions and responses, which the court considered prior to granting the motion by a docket entry order on April 17, 1993.

The facts disclosed by the discovery can be summarized as follows: About a year before the accident, Mr. and Mrs. Sims purchased and assembled a gas grill manufactured by Sunbeam. On April 4, 1989, Mr. Sims used the grill to cook supper. The grill was located under

their carport, which was attached to their home. After cooking, Mr. Sims removed the food and followed the recommended cleaning procedure: he turned both burners up to high and closed the lid. Mr. Sims then went inside his house to eat supper. After about 10 minutes, the lights in the house went out. Mr. Sims walked outside to check on the grill. By then, the grill and part of the house were in flames.

Shortly after the fire, Alan Clark, director of investigative services for Grinnell Mutual Reinsurance Company (Grinnell), came to Mr. and Mrs. Simses' home to investigate the cause of the fire on behalf of the insurance company. Clark took numerous photographs of the grill and the fire scene. Shortly thereafter, he or someone at his direction removed the entire assembled grill, including the propane tank used just before the fire and the wooden frame, from the Simses' home. When removed, the grill was in the same condition it was in immediately after the fire.

The grill was stored at the insurance company's office in Shelbyville, Illinois, until the spring of 1990, when Clark and Tom L. Hayes, the secretary/manager for the insurance company, mutually decided to disassemble the grill for shipping to another of plaintiff's experts, Dr. V.R. Nelson, in Sioux Falls, South Dakota. At that time, the grill body and its component parts were packaged into a wooden crate and sent for examination to Dr. Nelson. The grill frame, propane tank, regulator, and rubber propane hose were not sent to Dr. Nelson. In August 1990, the regulator and rubber propane hose were sent to Dr. Nelson, and the grill frame and operating propane tank remained at the insurance company's office. The wooden grill frame was inadvertently discarded when the insurance company's office was remodeled. The operating propane tank was used for approximately a year at the home of a secretary of the insurance company.

Dr. Nelson examined the grill parts and concluded that the fire was caused by excessively high gas pressure resulting in high temperature and high flames. Excessive gas pressure is usually a problem with the pressure regulator, but the regulator was working properly at the time Dr. Nelson examined it. However, Dr. Nelson stated that pressure regulators can temporarily malfunction if dirt or other debris pass through the regulator. Each time the propane tank is filled, foreign material can be introduced into the regulator, causing it to temporarily malfunction. Dr. Nelson concluded that the product was not defective and, therefore, the insurance company had no case against Sunbeam.

After Dr. Nelson examined the grill, it was shipped to Grinnell's

office in Grinnell, Iowa. The insurance company was apparently dissatisfied with Dr. Nelson's conclusion, because in February 1991, Clark personally transported the wooden crate containing the grill remains to Dr. S.P. Sutera at Washington University in St. Louis, Missouri. After examining the grill, Dr. Sutera concluded that the flame was abnormally high inside the closed grill and that the regulator was set higher than normal for gas appliances like this grill. The abnormally high flame was "due, in part, possibly to the accumulated meat grease which had dropped on the lava rock, and possibly in part due to the high outlet pressure of the regulator." The high flame made continuous contact with the hood of the grill to the point where it began to deform. The deformation of the hood caused the glass viewing window to break out, allowing flames to shoot out of the grill. He concluded that the materials in the hood and window attachment were inadequate to withstand the heat generated from the recommended cleaning procedure.

After Dr. Sutera examined the grill, it was again packaged into a wooden crate and transported to the Grinnell office in Iowa, and then, in July 1992, the same, unopened wooden crate was transported to the insurance company's office in Shelbyville, Illinois. In September 1992, Dr. William Baynes, Sunbeam's expert, examined the grill at the insurance company's office. Dr. Baynes testified that the only parts of the grill available for his examination were "two castings, a control panel, a burner, a piece of burned hose, a piece of a rotisserie, some metal parts like a warming rack, the remainder of a heat indicator, a window frame and a couple of wooden handles." He was not able to examine the operating propane tank, the regulator, a second burner, or the wooden grill frame. However, just prior to the time that the court granted the motion to bar evidence, the insurance company located both the regulator and the operating propane tank and offered them to Sunbeam for inspection.

Based upon his examination, Dr. Baynes testified that the fire started in the venturi tubes connecting the propane tank to the grill burners, due to a spider or some other obstruction in the venturi tubes. He refuted Dr. Sutera's conclusions and stated that he did not need to investigate further because he felt comfortable with his opinion, but that he would defer to Sunbeam's attorney regarding the need for further investigations.

On March 15, 1993, Sunbeam filed a reply to the insurance company's response to their motion to bar evidence, to which they attached Dr. Baynes' affidavit. In his affidavit, Dr. Baynes stated, *inter alia*, that Sunbeam could have established additional defenses if allowed to examine the assembled grill frame in the same condition

it was in immediately after the fire. Dr. Baynes stated that an examination of the burn patterns on the assembled grill could have provided information about alternative sources of the fire and could have allowed him to further rebut Dr. Sutera's opinions and bolster his own conclusions. Additionally, if he had been able to inspect the fully assembled grill, he could have determined if the grill was improperly assembled or modified and, if so, if that was in any way responsible for the fire.

On April 17, 1993, the court granted Sunbeam's motion to bar evidence, ordering that plaintiffs were not allowed to present any evidence at trial regarding the defects alleged to have existed in the grill or any testimony regarding the origin or spread of the fire within the grill. On May 3, 1993, Sunbeam filed a motion for summary judgment, alleging that plaintiffs could not establish a *prima facie* case of product liability without the barred evidence, and that, as a result, no genuine issue of material fact remained for resolution by a jury.

On May 19, 1993, the insurance company filed a response to the motion for summary judgment but alleged only that the April 17, 1993, docket entry was erroneous and should be reconsidered. The insurance company also asked the court to clarify its April 17, 1993, order. On May 26, 1993, the trial court, by docket entry order, ruled on the insurance company's motion to clarify its former docket order, finding that the docket entry was primarily based upon the operating cylinder and the grill frame and its wooden planking. The court also found that the regulator was withdrawn from the motion to bar and was not any basis for the docket order. The court granted the motion for summary judgment in favor of Sunbeam and against plaintiffs.

On appeal, the insurance company argues that Sunbeam was not prejudiced by the destruction or spoliation of the grill frame and other parts because its expert was able to form extensive opinions about the product and was able to rebut the opinions of the insurance company's experts. We disagree. Even though the regulator and operating propane tank were available to Sunbeam's experts before the trial court granted the motion to bar evidence, the wooden grill frame has not been located. The insurance company has not presented any evidence or argument to refute Dr. Baynes' conclusion and Sunbeam's argument that they have been prejudiced by not being able to examine the fully assembled grill in its precise postfire condition.

Supreme Court Rule 219(c) (134 Ill. 2d R. 219(c)), in relevant part, is as follows:

> "If a party *** unreasonably refuses to comply with any provision of [the rules of pretrial procedure or discovery] or fails to

comply with any order entered under these rules, the court, on motion, may enter \*\*\* such orders as are just, including, among others, the following:

\* \* \*

(iii) that he be debarred from maintaining any particular claim \*\*\* or defense relating to that issue;

(iv) that a witness be barred from testifying concerning that issue; [or]

(v) that, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that his action be dismissed with or without prejudice." 134 Ill. 2d R. 219(c).

Thus, under Rule 219(c), a trial court is authorized to bar testimony or other evidence if a party unreasonably refuses to comply with the relevant discovery rules, so long as the sanction imposed is just. (*American Family Insurance Co. v. Village Pontiac-GMC, Inc.* (1992), 223 Ill. App. 3d 624, 585 N.E.2d 1115.) Unreasonable noncompliance with a discovery rule has been defined by the courts as a deliberate and pronounced disregard for a discovery rule. (*Lavaja v. Carter* (1987), 153 Ill. App. 3d 317, 505 N.E.2d 694.) Unreasonable noncompliance with discovery rules is determined, at least in part, by the importance of the information or product that has not been produced. *American Family Insurance Co.*, 223 Ill. App. 3d 624, 585 N.E.2d 1115.

The decision of whether to impose sanctions pursuant to Rule 219(c) (134 Ill. 2d R. 219(c)) and, if so, the type of sanction, is largely within the sound discretion of the trial court, and that decision will not be disturbed absent a clear abuse of discretion. (*Graves v. Daley* (1988), 172 Ill. App. 3d 35, 526 N.E.2d 679.) Illinois courts have upheld sanctions for destruction of evidence in violation of a protective order and for failure to comply with discovery orders after evidence was inadvertently lost. (*Stegmiller v. H.P.E., Inc.* (1980), 81 Ill. App. 3d 1144, 401 N.E.2d 1156; see also *Marrocco v. General Motors Corp.* (7th Cir. 1992), 966 F.2d 220; *State Farm Fire & Casualty Co. v. Frigidaire, Division of General Motors Corp.* (N.D. Ill. 1992), 146 F.R.D. 160; *Jones v. Goodyear Tire & Rubber Co.* (C.D. Ill. 1991), 137 F.R.D. 657, aff'd (1992), 966 F.2d 220.) Sanctions may also be imposed even if no prior court order protecting the information exists. *American Family Insurance Co.*, 223 Ill. App. 3d 624, 585 N.E.2d 1115.

Preservation of the allegedly defective products in product liability cases is of the utmost importance to both the proof and defense of such cases. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d

1050, 473 N.E.2d 444.) The allegedly defective product, in the condition it was in at the time of the occurrence, is often important in determining how, why, and if the product is actually defective and is usually far more instructive to a fact-finder than photographs or oral descriptions. (*American Family Insurance Co.*, 223 Ill. App. 3d 624, 585 N.E.2d 1115.) "As a matter of sound public policy, an expert should not be permitted intentionally or negligently to destroy such evidence and then substitute his or her own description of it." *American Family Insurance Co.*, 223 Ill. App. 3d at 627-28, 585 N.E.2d at 1118.

We see no reason why the public policy rationale expressed in the *American Family* case should not be applied in this case, although it appears from the record that it was the insurance company, rather than the insurance company's expert, that misplaced the wooden frame of the grill in this case. The insurance company argues that it merely misplaced the grill's wooden frame, which is not sufficiently egregious for the court to grant Sunbeam's case-dispositive motion to bar all evidence regarding the allegedly defective grill. We find no merit in this argument. The grill was removed from the fire scene in its precise postfire condition by an expert with years of training in determining the cause and origin of fires. The insurance company, together with that expert, then decided to dismantle the grill for shipment to another expert. While the grill was entirely within the insurance company's control and, evidently, before plaintiffs filed the original complaint in March 1991, the grill's wooden frame was discarded, albeit inadvertently.

The insurance company argues only that Sunbeam did not suffer any prejudice because Dr. Baynes was able to form "an opinion" contrary to the opinion of Dr. Sutera. However, the insurance company did not file any affidavit or other evidence to refute Sunbeam's claim that it was prejudiced because it was not able to examine the grill in its precise postfire condition and that such an examination may have provided evidence to further support Dr. Baynes' opinion and to refute Clark's and Dr. Sutera's findings. We find Sunbeam's argument on this point compelling, since the grill was assembled and was to be properly maintained by the users, Mr. and Mrs. Sims. Sunbeam claimed in its uncontroverted affidavit that it might have been able to determine an alternative cause for the fire if its expert had been allowed to inspect the grill for improper assembly, alteration, modification, or maintenance. An examination of the assembled grill also might have revealed contaminated gas, leaks at the connection of the grill and cylinder, or tampering with the valves and assembly and whether the burn patterns on the cylinder or frame indicated another origin of the fire.

By the inadvertent destruction of a portion of the grill, the insurance company effectively foreclosed a possible affirmative defense of what may have been the actual cause of the fire. Sunbeam thus lost any opportunity to present affirmative defenses of alternative causes of the fire and was limited by the insurance company's action to merely rebutting Dr. Sutera's opinion. Mere rebuttal of the theory of the insurance company's expert may not be nearly as effective a defense as a presentation to the jury by Sunbeam that the fire was actually caused by something other than a defective product. In light of these limitations on Sunbeam's ability to defend itself and a reasonable possibility that the insurance company's acts foreclosed the truth as to the cause of the fire from ever being ascertained, we cannot say that the trial court erred in barring evidence or testimony about the allegedly defective grill. See *State Farm Fire & Casualty Co.*, 146 F.R.D. 160; *American Family Insurance Co.*, 223 Ill. App. 3d 624, 585 N.E.2d 1115; *Graves*, 172 Ill. App. 3d 35, 526 N.E.2d 679 (wherein each court found that insurance companies have a duty, which predates the filing of a complaint, to preserve a product which is the basis for a product liability action the subrogating insurance company intends to file).

We are aware that courts should be reluctant to grant the extreme sanction of barring evidence when that ruling effectively resolves the case against the proponent of the evidence, but, in view of the uncontroverted affidavit which established prejudice to the defendant by the plaintiff's treatment of the gas grill, we cannot help but conclude that the trial court did not err in its ruling. Accordingly, we find that the trial court did not abuse its discretion in granting the motion to bar evidence and did not err in granting the motion for summary judgment.

Affirmed.

CHAPMAN and RARICK, JJ., concur.