**IOWA HAM CANNING, INC.,** Plaintiff,

v.

**HANDTMANN, INC. and, Handtmann–Piereder Machinery, Ltd.,** Defendants.

No. 93 C 1685.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 13, 1994.

Richard B. Allyn, Robins, Kaplan, Miller & Ciresi, Minneapolis, MN, and Charles Lincoln Philbrick, Robert J. Gilbertson, and Timothy Michael Block, Robins, Kaplan, Miller & Ciresi, Chicago, IL, for plaintiff.

Brian William Bell, Aaron Thomas Shepley, William Blake Weiler, Swanson, Martin & Bell, David Patterson Gloor, David C. Van Dyke, Cassiday, Schade & Gloor, and Francis P. Cuisinier and Stephen J. Tasch, Law Offices of Shelmerdeane A. Miller, Chicago, IL, for defendants.

## OPINION AND ORDER

NORGLE, District Judge:

Before the court are the objections of plaintiff Iowa Ham Canning, Inc. ("IHC") to the November 8, 1994, Report and Recommendation ("Report") of Magistrate Judge Edward A. Bobrick. For the following reasons, the objections are sustained and the motions of defendants Handtmann–Piereder Machinery, Ltd. ("Handtmann–Piereder") and Handtmann, Inc. ("Handtmann") (collectively "Handtmanns") for summary judgment are denied.

### FACTS [1]

IHC brought a three-count complaint against Handtmanns under 28 U.S.C.

---

1. The following facts are drawn from various statements the parties submitted in compliance with Rules 12(M) and 12(N) of the Rules of the United States District Court for the Northern

§ 1332(a)(1) seeking damages resulting from certain meat contamination. Prior to January 1, 1991, IHC purchased two identical stuffing machines, serial numbers 153 ("153 stuffer") and 187 ("187 stuffer"), and Handtmann–Piereder installed and serviced them. According to IHC's allegations, on three separate occasions in 1991, 1992, and 1993, a seal failure in the stuffers allowed meat juices to travel "down the meat pump drive shaft into the ball bearings causing corrosion of the bearings and the shaft housing" and contaminating vast amounts of IHC's ham. (Handtmann–Piereder's R. 12(M) Stmt. ¶ 4.)

The contaminants in the ham were metal shavings from the stuffers. Allegedly, the seal, bearing, shaft and meat pumps of the 153 and 187 stuffers were defective. The three separate occasions of contamination rendered a great amount of IHC's ham worthless. In fact, the United States Department of Agriculture ("USDA") ordered IHC to dispose of the contaminated meat.

■ After incurring the property loss as a result of the February 19, 1991 contamination, IHC notified its insurance carrier Hartford Steam Boiler Inspection and Insurance Company ("HSB") on July 1, 1991. On July 24, 1991, HSB commenced an investigation as to the possibility of a subrogation action. As a result of the investigation, HSB reached a conclusion that there was a "possibility" of a subrogation action against Handtmann–Piereder towards the end of July 1991.[2]

Nonetheless, IHC discarded the seal, bearing, shaft and meat pump involved in the 1991 and 1992 contaminations. At the time IHC discarded those parts, it did not contemplate or anticipate filing lawsuits against Handtmanns. IHC, however, retained the stuffer itself and the bearing housings from the 1991 and 1992 losses. In addition, IHC retained the 187 stuffer, which allegedly caused the 1993 contamination. None of the 187 stuffer parts were discarded.

On August 30, 1994, Handtmanns filed motions for summary judgment based on the doctrine of spoliation of evidence. Essentially, Handtmanns seek a judgment as a matter of law with respect to the damage claims based on the 1991 and 1992 losses because IHC discarded the seal, bearing, shaft and meat pump of the 153 stuffer. The claim arising out of the 1993 loss is not an issue in Handtmanns' motion for summary judgment.

## DISCUSSION

■ Pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), the court reviews the Report and arguments of counsel *de novo*. The court referred Handtmanns' motions for summary judgment to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B). The Magistrate Judge conducted a hearing and issued a twelve-page Report on November 8, 1994. The Report recommends that Handtmanns' motions should be granted "to the extent that the complaint is dismissed as to those allegations of damages occurring in February, 1991 and January, 1992." (Report at 12.) After considering the Report and arguments of counsel, the court finds IHC's objections to be meritorious; therefore, the Report is reject-

District of Illinois ("Local Rules"). The court will accept those factual statements that are well pled and in compliance with the Local Rules 12(M)(3), 12(N)(3)(a), and 12(N)(3)(b). Any statements not in compliance are not considered. Further, any facts properly asserted by the litigants in the 12(M)(3) and 12(N)(3)(b) statements are deemed admitted unless the responding party contradicts them in the manner specified under Local Rules 12(M) and 12(N)(3)(a). *Knox v. McGinnis*, 998 F.2d 1405, 1408 n. 8 (7th Cir. 1993); *see also Early v. Bankers Life & Casualty Co.*, 853 F.Supp. 1074, 1079 (N.D.Ill.1994) (holding that failure to comply with Rule 12(N) results in material facts being admitted). A mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material. *Edward E. Gillen Co. v. City of Lake Forest*, 3 F.3d 192, 196 (7th Cir. 1993). The Seventh Circuit has repeatedly upheld the strict application of Local Rule 12(N). *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.1992) (collecting cases).

2. Handtmanns introduce facts as they pertain to HSB in their motion for summary judgment, but the court places no relevance to these because Handtmanns fail to adduce other facts to show the nexus between HSB's knowledge and conduct and ICH's duty to preserve the relevant machine parts. Further, there is no evidence to explain the interest of HSB to the instant litigation. The court will not assume facts in a light favorable to the movants.

ed and Handtmanns' motions for summary judgment are denied.

■ Summary judgment is proper only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Transportation Communications Int'l Union v. CSX Transp., Inc.*, 30 F.3d 903, 904 (7th Cir.1994). In examining the various evidence to resolve the issues raised in the motion for summary judgment, the court must draw all reasonable inferences in favor of the party opposing the motion. *Cincinnati Ins. Co. v. Flanders Elec. Motor. Serv., Inc.*, 40 F.3d 146 (7th Cir.1994); *Associated Milk Producers, Inc. v. Meadow Gold Dairies*, 27 F.3d 268, 270 (7th Cir.1994).

■ Defendants fail to present sufficient evidence to establish that sanctions of dismissal is warranted in this case. IHC does not challenge the axiom that preservation of an allegedly defective product is extremely vital to the prosecution and defense of a product liability action. *See Shimanovsky v. General Motors Corp.*, No. 1–92–4386, 1994 WL 652689, at *4 (Ill.App.Ct. Nov. 21, 1994); *Graves v. Daley*, 172 Ill.App.3d 35, 122 Ill.Dec. 420, 422, 526 N.E.2d 679, 681 (1988).[3] One of the underlying reasons for the rule is that "[t]he physical object itself in the precise condition immediately after an accident may be far more instructive and persuasive to a jury than oral or photographic descriptions." *American Family Ins. Co. v. Village Pontiac–GMC, Inc.*, 223 Ill.App.3d 624, 166 Ill.Dec. 93, 96, 585 N.E.2d 1115, 1118 (1992). Further, in order for a party to tender an expert opinion without having it rendered a mere speculation, the expert must have examined the actual product in its original condition. *See Marrocco v. General Motors Corp.*, 966 F.2d 220, 223 (7th Cir. 1992). For these reasons, a court may im-

pose sanctions on the party who caused the relevant product unavailable. *State Farm Fire & Casualty v. Frigidaire*, 146 F.R.D. 160, 163 (N.D.Ill.1992) (applying Illinois law).

■ A defendant seeking sanctions is not required under Illinois law to prove that the plaintiff deliberately or intentionally destroyed, discarded, or altered the material product. *Argueta v. Baltimore & Ohio R.R.*, 224 Ill.App.3d 11, 166 Ill.Dec. 428, 435, 586 N.E.2d 386, 393 (1991), *appeal denied*, 144 Ill.2d 631, 169 Ill.Dec. 140, 591 N.E.2d 20 (1992). The defendant must, however, establish that at the time of the disposition or alteration, the plaintiff knew or should have known that the allegedly faulty product would be a material evidence in the contemplated product liability suit and that the absence of that product is prejudicial to the defendant. *State Farm*, 146 F.R.D. at 162. Undoubtedly, this standard presumes that the responding party was actually responsible for the destruction or alteration. *See Applegate v. Seaborn*, 132 Ill.App.3d 473, 87 Ill.Dec. 473, 477 N.E.2d 74 (1985).

In advancing the position that they are entitled to judgment as a matter of law, Handtmanns rely heavily on *State Farm*, as did the Magistrate Judge in agreeing with their position. Hence, a brief discussion of that opinion is appropriate in resolving the issues before this court. In *State Farm*, the plaintiff insurer, as the subrogee, filed a product liability lawsuit against the manufacturer of a dishwasher to recover damages incurred in a house fire. The day after the fire, an adjuster for the plaintiff insurer performed a ninety minute inspection of the scene. At the conclusion of his inspection, the adjuster instructed the insureds not to dispose of the dishwasher because he suspected it to be the cause of the fire. *State Farm*, 146 F.R.D. at 161.

Seven days later, the adjuster contacted a professional engineer to conduct an examination of the scene. During their initial con-

3. The court, sitting in diversity, must apply the relevant state substantive law. *Colip v. Clare*, 26 F.3d 712, 714 (7th Cir.1994). In diversity cases, absent a challenge by either party as to the choice of law, the law of the forum state will govern the substantive issues raised in the pleadings. *Luna v. Meinke*, 844 F.Supp. 1284, 1287 n. 2 (N.D.Ill.1994). Further, the parties to the instant action all agree that the applicable law is that of Illinois.

versation, the adjuster expressed his opinion that the dishwasher caused the fire. The expert, as directed, conducted his own inspection of the scene that day and concluded that the dishwasher was the most likely culprit. Four days later, the expert returned and focused his inspection on the dishwasher. Immediately following the second examination, the expert informed the adjuster that a short in the dishwasher wiring caused the fire. The expert later reduced his opinion in writing and submitted the report to the plaintiff insurer. The dishwasher was later discarded and was made unavailable for the defendant manufacturer's independent inspection. *Id.*

Because the plaintiff insurer in *State Farm* failed to preserve the dishwasher, the defendant manufacturer filed a motion to dismiss the action. *Id.* Judge Aspen agreed with the defendant manufacturer's position and dismissed the complaint. *Id.* at 163. In dismissing the action, Judge Aspen considered the facts that the plaintiff insurer hired an expert following the fire and that the "expert, after two meticulous examinations of the appliance, pinpointed the origin of the fire at the lower right hand corner of the dishwasher." *Id.* After the expert reached a conclusion, the plaintiff insurer allowed for the disposition of the dishwasher making it unavailable for the defendant manufacturer to inspect. In addition, the *State Farm* court noted that the plaintiff expert himself admitted that it was impossible to determine the cause of the fire by merely examining the scraps of the dishwasher retained. *Id.* Under these circumstances, the *State Farm* court held that the plaintiff insurer's conduct warranted sanctions for failing to preserve the dishwasher and dismissed the case. *Id.*

In so holding, the *State Farm* court followed the law as defined under *Graves. Id.* at 162–63. Illinois courts have repeatedly relied on the *Graves* decision and imposed sanctions to those plaintiffs who made it impossible for the defendant manufacturers to inspect the allegedly defective product. *See Shimanovsky,* 1994 WL 652689, at *5; *Shelbyville Mut. Ins. Co. v. Sunbeam Leisure Prods. Co.,* 262 Ill.App.3d 636, 199 Ill.Dec.

965, 970, 634 N.E.2d 1319, 1324 *appeal denied,* 157 Ill.2d 523, 642 N.E.2d 1304 (1994); *American Family,* 166 Ill.Dec. at 96, 585 N.E.2d at 1118 ("We believe that *Graves* is sound law...."). The Illinois courts have, however, failed to delineate a functional standard for the court to follow.

■■■ A review of prior Illinois decisions indicates that the imposition of sanctions based on the doctrine of spoliation of evidence must be resolved on a case by case basis. Notwithstanding the absence of a well defined legal standard, the Illinois decisions suggest that the issue of imposing sanctions turns on whether the plaintiff anticipated a product liability suit prior to making the product unavailable for the defendant's inspection, and whether the unavailability gives the plaintiff an unfair advantage over the defendant.

For example, in *Shimanovsky,* that the plaintiffs retained an attorney and that attorney then retained a mechanical engineer to examine the allegedly defective product demonstrated that the plaintiffs anticipated a lawsuit and yet permitted destructive testing without first contacting the manufacturer. *Shimanovsky,* 1994 WL 652689, at *1–2. Additionally, the *Shimanovsky* court considered the defendant manufacturer's expert testimony that the destructive testing prevented them from conducting independent testings to form an expert opinion with respect to the cause of the injurious incident. *Id.* at *3. The latter evidence established the unfair advantage the plaintiffs had over the manufacturer because the plaintiffs were able to introduce expert testimony, whereas the manufacturer was prevented from introducing any expert opinion to rebut the plaintiffs' theory or to support its own defense theory.

Similarly, in *Graves,* the insurance company, which covered the damage to a house destroyed in a fire, dispatched an expert to inspect the scene. As a result of the expert's inspection, the insurance company determined the cause of the fire to be a faulty

furnace. Yet, the insurance company allowed the furnace to be discarded before the defendant manufacturer had an opportunity to conduct its own examination. *Graves,* 122 Ill.Dec. at 421, 526 N.E.2d at 680. Thus, the insurance company was the only party that had admissible expert testimony to support its allegations.

■ A well-defined legal standard in applying the doctrine of spoliation for purposes of imposing sanctions, which are likely fatal for complaints, is vital to prevent potential abuses. In *Graves,* then appellate judge, Justice Heiple expressed the following concern:

> The precedential implications of [the *Graves* ] ruling are truly enormous. Future plaintiffs may likewise find themselves tossed out of court because they tossed out their junk. It could be a wrecked car, a severed body part, an item of clothing, a bandage, a dead cat. Who knows? Doubtless, resourceful defendants will find a good reasons for claiming that defendants [sic] corruptly destroyed this or that item of physical evidence knowing full well that a law suit [sic] was being contemplated and that the evidence would be material.

*Graves,* 122 Ill.Dec. at 422, 526 N.E.2d at 682 (Heiple, J., dissenting). To safeguard against these contingencies, the doctrine of spoliation must be carefully applied.

■ The above discussion supports the standard solidified in *State Farm:* "a plaintiff is obligated, under penalty of sanctions, to preserve the allegedly defective product which it knew, or reasonably should have known, would be material in the contemplated product liability action." *State Farm,* 146 F.R.D. at 162. In applying this standard, the term "contemplated product liability action" demands higher scrutiny than mere "possible product liability action." If the threshold is the "possibility" of a product suit, then the only elements necessary to impose sanctions are that an injury occurred and that the product is discarded, destroyed or altered before the defendant manufacturer has an opportunity to inspect. However, Illinois law requires that the court examine the conduct of the plaintiff after the injury to determine whether a lawsuit was being contemplated at the time the product was made unavailable. *Shimanovsky,* 1994 WL 652689, at *1–2; *Graves,* 122 Ill.Dec. at 420–21, 526 N.E.2d at 679–80.

■ Establishing the requisite knowledge standing alone is not sufficient to justify sanctions. Under Illinois law, the defendant seeking sanctions based on the doctrine of spoliation must also demonstrate that the unavailability of the relevant product or part gives the plaintiff an unfair advantage over the defendant. *American Family,* 166 Ill. Dec. at 96, 585 N.E.2d at 1118. The facts in *State Farm, Shimanovsky,* and *Graves* established that the plaintiffs' experts have had an opportunity to conduct meticulous examinations and testings to form an expert opinion to support the plaintiffs' prosecution. However, because the relevant products were either destroyed by testing or discarded outright, the defendants' experts were prevented from conducting their own inspections to form admissible opinions to defend their positions. To illustrate the unfair advantage, the defendant manufacturers provided expert testimony to establish prejudice resulting from the unavailability of the allegedly defective product.

■ In the case *sub judice,* IHC represents that it did not know that the discarded machine parts would be material evidence to the subject suit at the time those parts were discarded. In addition, IHC contests that at the time it discarded the parts, IHC did not contemplate a product suit against defendants. Furthermore, IHC argues that defendants failed to adduce any evidence to show that they would be prejudiced. The court agrees.

According to defendants, IHC knew of the *potential* for a product liability suit when IHC discarded certain defective machine parts of the 153 stuffer which allegedly caused contamination in 1991 and 1992. In support, defendants refer to two letters from IHC to the USDA which explain the source of the contamination of IHC's hams and the machine failure involved. The Magistrate

Judge agreed with defendants and charged IHC with the required knowledge at this point.

■ The requisite knowledge for imposing sanctions, however, is not the "potential" for litigation, but the "contemplation" or "anticipation" of product litigation. *State Farm*, 146 F.R.D. at 162. The potential for litigation would arise at the very moment of injury, but the injured party may not necessarily contemplate filing a lawsuit. The favorable inference the court must draw, as it is required, from the March and April 1991 letters to the USDA must be that IHC was demonstrating to the USDA that IHC responded quickly to the contamination problem and took effective remedial measures to correct the problem.

Further, the letters do not express IHC's intention or anticipation to litigate. The letters simply evince that the primary concern of IHC was its business operation. This may stretch the Magistrate Judge's credulity "that a manufacturer would not begin to contemplate litigation on some level in the wake of suffering a loss of almost $200,000 due to an equipment malfunction[,]" Handtmanns did not present sufficient evidence to support such a litigious accusation. An inference the court must draw in a summary judgment motion context must not be controlled or swayed by the public perception about litigation in the United States or rumors of sharks in the area.

■ More importantly, IHC in its 12(N)(3)(b) statement affirmatively stated that it did not contemplate a product liability action against Handtmanns when it discarded certain parts in 1991 and 1992. This statement must be accepted as true and cannot be ignored by the court. *See* Local Rule 12(M). Handtmanns did not deny this assertion and, therefore, the court must deem them as admitted. *Id.* The Magistrate Judge in rejecting the statement assessed the credibility of IHC's witness which is not permissible in a summary judgment motion. *Dey v. Colt Const. & Dev. Co.*, 28 F.3d 1446, 1457 (7th Cir.1994); *Wood v. Allstate Ins. Co.*, 21 F.3d 741, 746 (7th Cir.1994).

Handtmanns also fail to establish that the absence of the discarded 153 stuffer parts would operate as a prejudice and unfair advantage for IHC in resolving the suit. There is no evidence to support such a conclusion. Unlike the facts in *State Farm, Shimanovsky,* and *Graves,* the facts of this case demonstrate that IHC never retained an expert to inspect and test the stuffer parts involved in the 1991 and 1992 losses. IHC does not have the testimony of a qualified expert to support the allegation that the 153 stuffer parts were defective and that their defective condition caused the metal shaving contamination.

Furthermore, the 153 stuffer and the 187 stuffer are arguably identical machines with identical parts. The allegations are that the 187 stuffer caused contaminations in 1993 similar to the contamination in 1991 and 1992. Hence, this case is unique in that inspecting, testing, and examining the 187 stuffer machine may provide the information necessary to investigate the cause of the 1991 and 1992 contaminations. Not only is the 187 stuffer available for inspection and testing, but other parts of the 153 stuffer are also available for inspection. Nonetheless, Handtmanns chose not to adduce any expert statements to establish that the discarded items are crucial to the defense of the case, that studying the 187 stuffer to investigate the potential cause of the 1991 and 1992 contamination is worthless, or that Handtmanns' experts have even made an attempt to investigate the cause of the contamination with the items available. Handtmanns simply assert a self-serving conclusion that they are prejudiced. This is inadequate.

### CONCLUSION

For the foregoing reasons, the Report of Magistrate Judge Edward A. Bobrick is rejected and the motions of Handtmanns for summary judgment are denied.

IT IS SO ORDERED.