Steven **THIELE, Plaintiff,**

v.

**ODDY'S AUTO AND MARINE, INC., Defendant.**

**ODDY'S AUTO AND MARINE, INC., a/k/a Jim Oddy's Automotive, Inc., Defendant and Third–Party Plaintiff,**

v.

**FOUNTAIN POWERBOATS, INC., Third–Party Defendant.**

No. 93–CV–761C.

United States District Court, W.D. New York.

Nov. 30, 1995.

Clinton & Muzyka, P.C. (Arthur P. Skarmeas, of counsel), Boston, Massachusetts, and Hodgson, Russ, Andrews, Woods & Goodyear (Lisa C. Saurer, of counsel), Buffalo, New York, for Plaintiff.

Hall, Ricketts, Marky & Gurbacki (Robert. H. Gurbacki, of counsel), East Aurora, New York, for Defendant Oddy's Auto and Marine, Inc.

Saperston & Day, P.C. (Kathleen A. Burr, of counsel), Buffalo, New York, for Third–Party Defendant Fountain Powerboats, Inc.

## DECISION AND ORDER

CURTIN, District Judge.

### BACKGROUND

The lawsuits arise out of an incident which occurred on November 1, 1990, in the Niagara River. Plaintiff Thiele's Fountain powerboat was being operated by the defendant/third-party plaintiff, Jim Oddy, when fire started in the engine compartment and ultimately forced Oddy and an employee to abandon the boat. Item 16, ¶ 7. The boat then sank.

Oddy was in possession of the boat because he had contracted with Thiele to build and install two 700–horsepower engines into the 40–foot boat. Major modifications to the boat were required, and were completed in September, 1990, for a quoted price of $30,-600. Oddy was water-testing the boat at the time of the accident. *Id.*, ¶¶ 8, 9.

The sunken boat was ultimately hauled from the Niagara River and towed to Harbour Place, a Buffalo-area marina. On or about November 16 and 28, 1990, a group of investigators including representatives of Thiele's insurer, Metropolitan, and Oddy's insurer, the Hanover Insurance Company, and Mr. Oddy himself, inspected the remains of the boat in order to generate cause and origin reports for the respective insurance companies. *Id.* ¶¶ 10, 11. In addition, further opportunity to inspect the boat was offered to Mr. Oddy. Item 16, Ex. I, p. 1; Item 25, ¶ 8, Ex. A.

The report prepared for Hanover opines that the engine system alternators possibly caused the fire. The report's author stated in the report that the alternator for the port-side engine had been removed from its original location prior to his examination. Item 16, Ex. I, p. 2. The report prepared for Metropolitan concludes that the fire was caused by a failure of the water-cooling system to the port-side high performance header. Item 16, Ex. H, p. 4. According to the report, when the cooling system failed, the header overheated and caught fire. *Id.*

Believing there was no further use for the boat, it was destroyed. Item 16, ¶ 16. Plaintiff Thiele claims the boat was destroyed upon agreement with defendant and third-party plaintiff Oddy. Item 25, ¶ 8. Plaintiff Thiele attaches a letter to Oddy in support of this contention, but the letter makes no reference to the destruction of the boat. *Id.*, Ex. A. Although Oddy concedes he had some knowledge and involvement in the decision to destroy the boat, he claims he was not consulted concerning the propriety of the boat's disposal, and never agreed to its destruction. Gurbacki Aff., Item 20, ¶ 4E.

Fountain knew nothing about the Niagara River incident or its aftermath until contacted by Oddy's attorney by letter dated March 25, 1991. The letter was received five months after the incident, and after the boat was destroyed. Item 16, ¶ 17.

After the lawsuits were commenced in late 1993, Fountain's counsel filed a demand to inspect the vessel and component parts, which was served on March 25, 1994. *Id.*, ¶ 18, Ex. N. Fountain did not find out that the boat had been destroyed until plaintiff's responses were received in August 1994. *Id.*, ¶ 19, Ex. P.

Some time after the cause of origin reports were originally prepared, the alternators, which were in the possession of Thiele's insurance company, Metropolitan, were apparently lost. Item 16, ¶ 22. It is unclear from the parties' statements exactly when the alternators were lost. *Id.* But on July 28, 1995, Metropolitan's counsel informed counsel for the other parties that the alternators had been found in an office of Metropolitan's cause of origin experts. *Id.*

## DISCUSSION

### I. The East River doctrine bars any claim against Fountain, but not against Oddy.

█ It is well settled that when a tort claim arises on the high seas or navigable waters, admiralty law applies. *East River S.S. Corp. v. Transamerica Delaval*, 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1985). In addition, absent a relevant statute, courts apply judicially developed maritime law. *Id.* at 866, 106 S.Ct. at 2299.

The Supreme Court in *East River* held that in admiralty, a manufacturer in a commercial relationship has no duty under either a negligence or strict products liability theory to prevent a product from injuring itself. 476 U.S. at 871, 106 S.Ct. at 2302. At the heart of the Court's holding is the judgment that the contractual relationship between the manufacturer and the buyer is sufficient protection:

> Contract law, and the law of warranty in particular, is well suited to commercial controversies of the sort involved in this case because the parties may set the terms of their own agreements. The manufacturer can restrict its liability, within limits, by disclaiming warranties or limiting remedies. In exchange, the purchaser pays less for the product. Since a commercial situation generally does not involve large disparities in bargaining power, we see no reason to intrude into the parties' allocation of the risk.

*Id.* at 872–73, 106 S.Ct. at 2302–03 (citations and footnote omitted).

### A. Defendant and Third–Party Plaintiff Oddy v. Third–Party Defendant Fountain

█ Third-party defendant Fountain moves for summary judgment, arguing *inter alia*, that neither Oddy nor Thiele can bring a valid products liability action against it for alleged defects in the alternators pursuant to the Court's holding in *East River*. Item 17, p. 17.

Fountain is correct that *East River* protects it from any claim by Oddy in the present case. The Court's holding bars any products liability suit by Thiele against Fountain for the alleged failure of the alternators, where the resulting injury is purely economic, and based on damage to the boat itself. *East River*, 476 U.S. at 871, 106 S.Ct. at 2302. Any claim brought against Fountain by Thiele would therefore have to sound in warranty. Thiele could not bring such an action because Oddy's modifications were in breach of the warranty. Item 16, Ex. M. If Thiele has no claim against Fountain under the warranty, Oddy would have no claim against Fountain either. This court finds therefore, as a matter of law, that Oddy has no claim against Fountain.

### B. Plaintiff Thiele v. Defendant Oddy

█ Oddy argues that *East River* also shields him from any action by Thiele. Oddy attempts to ride the coattails of Fountain, arguing implicitly that there is no distinction between their respective positions. Gurbacki Aff., Item 20, ¶¶ 5, 6. This court finds significant differences.

Plaintiff argues correctly that the Court's holding in *East River* does not shield Oddy from liability because the claim against Oddy is not a products liability claim. Rather, Thiele's claims against Oddy is that the work performed on the boat by Oddy was negligent and that Oddy's negligence resulted in the destruction of the boat. Item 24, pp. 3–4. Further, the plaintiff is not alleging damage only to the "products" purchased from the defendant (the new engines and exhaust system), he is claiming that the boat itself was destroyed because of Oddy's negligence. *Id.* The Court's holding in *East River* cannot be extended to cover the negligence of a contractor in making alterations, especially where that contractor is making modifications in breach of the original manufacturer's warranty.

### II. Defendant Oddy cannot maintain a defense based on spoliation of the evidence.

█ In moving to dismiss, both Fountain and Oddy also invoke Fed.R.Civ.P. 37(d), which allows for the sanction against opposing parties of dismissal of their actions for failing to comply with discovery requests. Item 17, p. 11; Item 24, p. 4. Though drastic, the sanction has increasingly been awarded against parties who bring suit with knowledge that their own actions, or even those of a third party, have caused the loss or de-

struction of allegedly defective products or parts, and have known that the destruction would result in irreparable injury to another party's ability to defend the suit. *See Brancaccio v. Mitsubishi Motors Co., Inc.,* 1992 WL 189937 (S.D.N.Y.1992); *Brown v. Michelin Tire Corp.,* 204 A.D.2d 255, 611 N.Y.S.2d 594 (2d Dept.1994); *Marrocco v. General Motors Corp.,* 966 F.2d 220, decided together with *Jones v. Goodyear Tire and Rubber Company,* 966 F.2d 220 (7th Cir.1992); *Shelbyville Mutual Ins. Co. v. Sunbeam Leisure Products Inc.,* 262 Ill.App.3d 636, 199 Ill.Dec. 965, 634 N.E.2d 1319 (5th Dist.Ill.1994).

In such cases, it does not matter whether any of the parties complicit in the destruction engaged in such conduct willfully, or in bad faith, or simply through negligent fault. *Brancaccio,* 1992 WL 189937.

In *Brancaccio,* plaintiff's action was dismissed under Fed.R.Civ.P. 37(d) because the plaintiffs failed to preserve the automobile containing the allegedly defective seatbelt at issue. The vehicle was repossessed and taken from plaintiffs, but not before plaintiffs had an opportunity to hire an expert to examine the seatbelt and declare it defective. Defendants, however, had no opportunity to conduct their own inspection.

Notwithstanding that plaintiffs' expert report and photos of the seatbelt were available, the *Brancaccio* court determined that "without any ability to examine the car, defendants would be greatly frustrated in their ability to defend their case. Since plaintiffs are plainly at fault for allowing the car to be repossessed, their claims must be dismissed." *Id.* at *2.

In *State Farm Fire and Casualty Co. v. Frigidaire,* 146 F.R.D. 160 (N.D.Ill.1992), the court held that under Illinois law, plaintiff is obligated, under the penalty of sanctions, to preserve the allegedly defective product which it knew, or reasonably should have known, would be material in a contemplated products liability action. The court found that:

> The physical object itself in the precise condition immediately after an accident may be far more instructive and persuasive to a jury than oral or photographic descriptions. As a matter of sound public policy, an expert should not be permitted intentionally or negligently to destroy such evidence and then substitute his or her own description of it.

*Id.* at 163.

The issue in Oddy's case is whether the destruction of the boat caused "irreparable injury" to Oddy's ability to defend the suit, where Oddy and his representatives had the opportunity to inspect the boat prior to its destruction. This court concludes that it did not.

Defendant places special reliance on the *Frigidaire* holding. Gurbacki Aff., Item 20, ¶¶ 8–11. But *Frigidaire* does not support defendant's position because the defendant in this case, and his representatives, inspected the evidence. In *Frigidaire,* the defendant had no such opportunity. *Frigidaire,* 146 F.R.D. at 163. The *Frigidaire* court found simply that a party should not be forced to rely on the testimony of an opposing expert, or of photos taken by the opposition, in order to defend its case when the opposition knowingly destroyed the evidence. *Id.* The holding of the *Frigidaire* court does not extend the spoliation doctrine to situations where evidence is destroyed before trial, but subsequent to an inspection by both sides.

Nor do the other cases cited by Fountain, and adopted by Oddy, support defendant's position. In all the cited cases, plaintiffs had an opportunity to inspect the evidence immediately following the accident in question, and the defendants had either no opportunity to inspect the evidence, or could not inspect the evidence in its original post-accident condition. *See Brancaccio,* 1992 WL 189937; *Brown,* 611 N.Y.S.2d 594; *Marrocco,* 966 F.2d 220; *Shelbyville,* 199 Ill.Dec. 965, 634 N.E.2d 1319. In none of the cited cases where spoliation sanctions were imposed did the defendant have the opportunity that Oddy and his representatives had to inspect the evidence at the same time it was inspected by plaintiffs.

Third-party defendant Fountain is, however, protected by the spoliation defense from any cause of action brought by plaintiff Thiele which is not barred by the *East River* doctrine. Unlike Oddy, Fountain was never offered any opportunity to inspect the boat. In fact, Fountain was not even notified of the accident until the boat had been destroyed.

Like the defendant in *Brancaccio,* without any ability to examine the boat, Fountain will be greatly frustrated in its ability to defend its case. Since Thiele is plainly at fault for allowing the boat to be placed in a landfill, any claims against Fountain must be dismissed.

Defendant Oddy argues that "[b]y destroying those portions of the evidence that it deemed neutral or harmful to its case and preserving those portions that it felt helpful, [plaintiff] has attempted to orchestrate which items of evidence will or will not be available to the jury." Gurbacki Aff., Item 20, ¶ 9.

This argument is unpersuasive because it does not speak directly to the spoliation issue. Rather, questions about the chain of custody of the alternators or the evidence destroyed by plaintiffs subsequent to defendant's inspection can be brought up in the context of the admissibility of evidence, or to impeach the testimony of witnesses at trial. It does not, however, persuade the court that the drastic sanction of dismissal, based on a theory of spoliation, is appropriate.

### CONCLUSION

For the above reasons, third-party defendant's motion for summary judgment is granted. Defendant and third-party plaintiff's motion for summary judgment is denied. A telephone conference shall be held on December 15, 1995, at 10 a.m. to determine what steps shall now be taken to dispose of this case.

So ordered.